## LAWRENCE COUNTY v. MEADE COUNTY.

1. In the construction of a statute, the particular inquiry is not what is the abstract force of the words used, or what they may comprehend, but in what sense they were intended to be used as they are found in the act.

2. General words do not always extend to every case which literally falls within them, but when the intention can be collected from the statute itself, words may be modified, altered or supplied so as to obviate any repugnance or inconsistency with such intention.

3. L. county, having an indebtedness, both bonded and floating, was by act of the territorial legislature divided, and the segregated portion erected into the county of M. The act provided that M. county should assume and pay its proper proportion of all indebtedness of L. county, fixing a rule by which proportion should be ascertained. It further provided that M. county should issue bonds to L. county for its proportion of L. county's obligations which it was to assume, which bonds should correspond in respect to time of maturity, rate of interest, and place of payment with the obligations of L. county. *Held*, that as to the floating indebtedness of L. county represented by past-due warrants,

the provisions for the issue of bonds by M. county could not apply without involving the incongruous consequence, among others, of issuing bonds with no term to run or future time of payment, and that such provisions for issuing bonds by M. county did not apply to the floating indebtedness represented by past due warrants.

4. *Held*, further, that the effect of the act was to require M. county to assume its share of the floating indebtedness of L. county, and as between itself and L. county, to make payment of the same in the usual way of paying matured indebtedness.

(Syllabus by the Court.     Opinion filed Feb. 9, 1895.)

Appeal from circuit court, Meade county.    Hon. CHARLES M. THOMAS, Judge.

Action by the county of Lawrence against the county of Meade.    Judgment for defendant, and plaintiff appeals.    Reversed.

The facts are fully stated in the opinion.

*Joseph B. Moore* and *Robert C. Hays*, for appellant.

*Thomas E. Harvey*, for respondent.

KELLAM, J.    This is an action brought by the county of Lawrence against the county of Meade upon the following facts as stated in the complaint:

That in the year 1889 Lawrence county was by act of the territorial legislature divided, and the segregated portion erected into the county of Meade.    That the legislative act so creating Meade county contained the following provisions:

''Sec. 13.    The county of Meade organized under this act shall assume and pay, as hereinafter provided, a just proportion of the indebtedness of Lawrence county, from which it is segregated, based upon the assessed valuation of said Lawrence county for the year 1888, and upon the proportion that the valuation within the county of Meade bears by the said assessment of 1888 to the valuation within the whole of Lawrence county; and it is hereby made the duty of the county commissioners of both the counties of Meade and Lawrence to meet together at the county seat of Lawrence county, on the first day

of July, 1889, and at such meeting they shall ascertain as near as may be the total outstanding indebtedness of Lawrence county on the first day of July, the date of the joint session provided for in this section, and from the total they shall make following deduction, to wit: (1) The amount of all sums due and payable to said Lawrence county as rents. (2) The amount of outstanding bonds given for public property owned by and remaining within the limits of the county of Lawrence. (3) The amount of public funds on hand and belonging to the county of Lawrence, on the day from which its outstanding indebtedness is ascertained by the joint board of county commissioners as provided for in this section, and not belonging to the special funds hereinafter mentioned, be the amount which the county organized under this act shall pay proportion of, in the proportion hereinbefore specified; and it shall be the duty of such commissioners to ascertain and fix the amount that Meade county shall assume and pay to Lawrence county."

"Sec. 19. The amount of indebtedness of Meade county organized under this act, as ascertained by the two boards of county commissioners, in compliance with the provisions of the preceding section, shall be paid to Lawrence county in the bonds of Meade county as hereinafter provided.

"Sec. 20. Such bonds shall be dated on the 1st day of July, 1889, as provided in section 13 of this act, and shall be issued for a period corresponding with the time or terms on which the obligations of the original county became due and payable and shall be payable at the same place and shall bear the same rate of interest as the obligations of the original county, said commissioners taking care to classify the liquidating bonds, issuing a due proportion of each, in proportion to each of Lawrence county's obligations bearing different rates of interest and places of payment, and said Lawrence county shall have authority to exchange such bonds for an equal amount of obligations of its own of the same class,

"Sec. 22. The board of county commissioners of Meade county are hereby empowered and directed to issue such liquidating bonds in denominations as may be required by the county of Lawrence, not to exceed one thousand dollars ($1,000) each, and deliver the same to the county clerk of said Lawrence county, who shall receipt therefor, attaching the seal of his office to such receipts, and the county clerk of Meade county shall enter such receipts at length upon the records of the county commissioners and note the same in the bond register of his county."

The further facts, as stated in the complaint, are as follows: "Fourth. That the board of county commissioners of Meade county and the board of county commissioners of Lawrence county met in joint session at the court house in the city of Deadwood, in pursuance of the provisions of said section 13, for the purpose of ascertaining the total outstanding indebtedness of Lawrence county as it existed on the 1st day of July, 1889, and for the purpose of ascertaining the proportion of said indebtedness which Meade county should pay according to the provisions of said section 13. Fifth. That it was ascertained and determined and agreed to by the boards of county commissioners of the counties of Meade and Lawrence, that the total outstanding floating indebtedness of Lawrence county, as evidenced by the warrants of said county outstanding on the 1st day of July, 1889, of which Meade county agreed to pay and should pay its proportion was $109,442.57. Sixth. That it was ascertained and agreed by said board of county commissioners that the proportion of the outstanding indebtedness of Lawrence county, which Meade county should assume and pay as provided in the said act creating Meade county, was 22.1122 per centum of said indebtedness. Seventh. That the amount of the outstanding floating indebtedness which Meade county should and did assume and agree to pay was $24,200.10. Eighth. That the defendant Meade county has not paid said sum, nor any part thereof, though the same has been demanded."

From these quotations from the complaint it will be seen that the action is for the recovery of Meade county's proportion of the floating indebtedness, as distinguished from its bonded indebtedness. Meade county having answered, and the case coming on for trial, defendant's counsel objected to the introduction of any evidence by plaintiff, on the ground that its complaint did not state facts constituting a cause of action. The objection was sustained, and judgment rendered against the plaintiff county, dismissing its complaint, and for costs. From this judgment Lawrence county appeals.

Whether the trial court was right or wrong in its ruling upon the objection to the complaint depends upon the interpretation to be given to the provisions of the law of 1889, with reference to the payment by Meade county of its proportion of the indebtedness of the original Lawrence county, from which it was set off. The defendant and respondent contends that it is expressly and specifically provided that such payment as to the entire indebtedness, whether floating or bonded, shall be made in the bonds of Meade county, and such was evidently the view of the trial court. If this view was correct, the objection was properly sustained, for the action was to recover a money judgment, the complaint containing nothing to show that Meade county had refused payment in its bonds, or that for any reason it was liable to a money judgment, if by the terms of the law it was entitled to make payment in bonds. We think it must be conceded at the outset that the language of the law is not only consistent with, but on its face suggests, the meaning contended for by respondent, and such must be accepted by the courts as its true meaning and correct interpretation, unless it is very clearly evident, from the manifest purpose and object of the act, and from the obvious consequences and effect of a literal interpretation of its terms, that such language was not used by the legislature or intended to be understood in a broad and literal sense. "The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they

were intended to be used as they are found in the act,     \*   \*   \*
General words do not always extend to every case which liter-
ally falls within them. When the intention can be collected
from the statute itself, words may be modified, altered, or sup-
plied so as to obviate any repugnance or inconsistency with
such intention." Suth. St. Const. § 246. In People v. Daven-
port, 91 N. Y. 574, this subject is elaborately discussed,
and authorities bearing thereon carefully collated, and the
court concludes and states the law to be that "when the lan-
guage of a statute, if implied in its literal sense, will lead
to an absurdity or manifest injustice, it is the duty of the court
to limit and restrict its operation." We think this proposition,
as a rule of interpretation, is conceded to be correct by the
most conservative authorities. This rule is supplementary and
auxillary to the fundamental one, that in the construction of
every statute the primary object sought is the intention of the
lawmakers, for, unless entirely unavoidable, a construction
will not be adopted which assumes an intention upon the part
of the legislature to do an absurd, unjust, or useless thing.

   With these controlling principles in mind, let us examine
the provisions of this act, for the purpose of ascertaining, as
definitely as possible, just what the legislature intended should
be done under it. Section 13 of the act recognizes the fact of
the indebtedness of Lawrence county, and the justice of con-
tinuing that portion of its territory cut off and erected into
Meade county as still liable in some way for its proportion of such
indebtedness, but the act nowhere expressly discriminates be-
tween the bonded and the floating indebtedness of the county.
It undoubtedly would have been competent for the legislature
to have left the entire indebtedness to rest upon Lawrence
county, without the assumption by Meade county of any part
thereof, and, if it had made no provision for such assumption
by Meade county, such would have been the legal effect and re-
sult of the act of division. In Laramie County Com'rs v. Al-
bany County Com'rs, 92 U. S. 311, Clifford, J., says that decis-

ions to this effect have been made "until the reported cases have become quite too numerous for citation." See, also, Town of Mt. Pleasant v. Beckwith, 100 U. S. 525; Hampshire v. Franklin, 16 Mass. 76; Depere v. Bellevue, 31 Wis. 125: Morgan v. Beloit City and Town, 7 Wall. 613. As already suggested, the legislature in making this division expressly recognized the justice and equity of requiring Meade county to assume its proper share of the "total outstanding indebtedness of Lawrence county," from which it was so cut off, and imposed upon the county commissioners of the two counties the duty of meeting together, and ascertaining, as near as might be, the "total outstanding indebtedness of Lawrence county," on the day when the act of division was to take effect. With this design, so expressly and explicitly declared, it is not allowable to suppose that the legislature intended to ignore the large floating indebtedness of Lawrence county, and to recognize only its bonded indebtedness, as a proper and equitable subject for contribution by Meade county. Both by the spirit and letter of the entire act we are constrained to believe that the legislature intended to require Meade county to assume its due and fair proportion of the indebtedness of Lawrence county, of which, up to the time of such division, it had been a part. It is significant, though, of course, not at all controlling, that such was the understanding of the two boards when met in joint session; for, as alleged in the complaint, they computed and fixed Meade county's proportion of the floating indebtedness, as distinguished from its bonded indebtedness.

We now reach the only question which has given us any considerable trouble. Was it the intention of the legislature to allow or require Meade county to issue bonds for its proportion to the indebtedness of Lawrence county, evidenced by its outstanding and past-due warrants, or only for its proportion of Lawrence county's bonded indebtedness, leaving it to assume its share of the floating indebtedness, and, as between itself and Lawrence county, to make payment for the same in the usual

way of paying matured indebtedness? Section 20 provides with particularity that the bonds which Meade county is authorized to issue, in pursuance of such division act, "shall be issued for a period corresponding with the term or terms on which the obligations of the original county became due and payable, * * said commissioners taking care to classify the liquidating bonds, issuing a due proportion of each in proportion to each of Lawrence county's obligations bearing different rates of interest and places of payment," etc. The only bonds that Meade county is authorized to issue by this act must correspond with and pursue the terms named in this section. So that if respondent's contention is correct, that bonds were to be issued to cover Meade county's proportion of all indebtedness, including that represented by its outstanding warrants, then such bonds must correspond, in respect to maturity, with the warrants which they would represent, and they would all necessarily be long past due when issued. To require Meade county to go through the perfunctory operation of issuing bonds, upon which action might be brought immediately upon their delivery, would apparently be so objectless and useless as to strongly argue against such being the intention or plan of the legislature. No reason occurs to us which would appear to justify or reasonably excuse such a requirement, while the reasons against it are obvious. It seems not only improbable, but almost incredible, that the legislature so intended. The language of the section strongly suggests that the obligations of Lawrence county contemplated by the legislature were such as might be payable at different times and at different places, and bearing different rates of interest. These are not characteristic features of warrants, but are of bonds. The bonds so to be issued are plainly bonds becoming due in the future, and having a definite time to run; for by section 21 the county treasurer of Meade county is required to register the same in a "Bond Register," in which he shall note "the date of issue, when and where payable"; and by section 23 the board of

county commissioners is required to levy a tax sufficient to pay
the interest on said bonds "as they shall become due." Taking
ing all these provisions together, we feel driven to one of two
conclusions,—either that the legislature did not intend that
Meade county should bear any portion of the floating indebtednes
of Lawrence county, or that it intended it should bear its share
of all indebtedness, leaving practically the same liability on it
as to time and place of payment, and terms generally, as was
on Lawrence county; in other words, that as to the warrant in-
indebtedness it was due and payable by Meade county under
the same conditions as due and payable by Lawrence county,
and as to the bonded indebtedness it should be assumed
and become due and payable by Meade county as it was due and
payable by Lawrence county. Driven to this choice of con-
clusions, we accept the latter with little hesitation as the most
consistent with the obvious spirit and intent of the act. It is
true that the term, "total outstanding indebtedness of Lawrence
county," would ordinarily include the floating or warrant in-
debtedness, as well as the bonded indebtedness; but it is equally
true, as already noticed, that where general language, con-
strued in a broad sense, would lead to absurdity or incongruity,
it may be restrained, and given a more restricted meaning.
Suth. St. Const. sec. 246. In Kennedy v. Gies, 25 Mich. 83,
where a board of county auditors was by statute empowered
"to adjust all claims" against the county, it was held that such
general language should be so restricted as not to include
claims in which the auditors themselves were interested; for
to read and accept the language literally would lead to results
so unfit and incongruous as to justify the conclusion that the leg-
islature did not intend to so use it. For the same reason we
conclude that the legislature by this act did not intend to im-
pose upon Meade county the fruitless duty of issuing bonds for
a past-due indebtedness, without allowing any extension of
time for payment,—bonds which should correspond in terms
with the already past due warrants, and by the issuing of

which nothing would be gained by or to either party. It seems to us that, if this indebtedness were intended to be paid in bonds, the terms of such bonds, particularly as to the time of maturity, would have been fixed by the act with sufficient definiteness to enable the county of Meade, through its proper officers, to issue them intelligently, and at least consistently with established business usage. We think the trial court was wrong in its interpretation of the law in this respect, and its consequent ruling as to the sufficiency of the complaint is erroneous. For this reason the judgment appealed from is reversed. All the judges concur.