STATE OF NORTH DAKOTA EX REL. THOMAS G. AHERN
v. T. G. ANDERS, Anton Sadowsky, and Frank Anderson, as
the County Commissioners of the County of Dunn in the State
of North Dakota, and as the Board of County Commissioners
of the County of Dunn in the State of North Dakota.

(152 N. W. 801.)

**Counties — organization of — laws — amendments — county seat — removal — relocation.**

1. Following Miller v. Norton, 22 N. D. 196, it is held that the Revised Statutes of 1895 were new legislation, a change from old to new, and not a continuation of the old with amendments. Chapter 21, Political Code of 1877, has therefore been repealed, and is now superseded by chapter 42, Political Code, being §§ 3191–3244, Comp. Laws 1913. Dunn county was organized under the later law, and an' election held under § 3233, Comp. Laws 1913, to determine whether the county seat should be removed from Manning to Dunn Center, is one for the *removal*, and not *relocation*, of said county seat.

**Counties — unorganized territory — elections — county seat.**

2. There is no provision for a location election in counties created from unorganized territory. But conceding, for argument only, that an election might have been held to relocate the county seat of Dunn county in 1914, the election in question cannot be now changed into one of that nature.

Opinion filed May 10, 1915. Rehearing denied June 1, 1915.

Appeal from the District Court of Dunn County, dismissing a writ of mandamus against the County Commissioners, *Crawford*, J.

Affirmed.

*Alf O. Nelson, A. S. Boe* and *Thos. H. Pugh,* for relator.

Article four (4) of chapter forty-two (42) of the Political Code is a removal statute, and not a relocation statute. Miller v. Norton, 22 N. D. 196, 132 N. W. 1080.

The Constitution preserved in force all territorial laws not repugnant to its provisions. Schedule to Const. § 2.

Repeals by implication are not favored. There must be a positive repugnancy between the provisions of the new laws and those of the old laws. Sargent County v. Sweetman, 29 N. D. 256, 150 N. W. 876, and cases cited.

The selection of a permanent county seat in place of a temporary one is not a removal, and such change is not subject to constitutional restrictions upon removals. 7 Am. & Eng. Enc. Law, 1015; Atty. Gen. v. Board of Canvassers, 64 Mich. 607, 31 N. W. 539; Doan v. Logan County, 3 Idaho, 38, 26 Pac. 167.

No county seat was ever established for Dunn County. Hence the removal statute cannot govern. Doan v. Logan County, 3 Idaho, 38, 26 Pac. 167.

*W. A. Carns* and *W. F. Burnett,* for respondents.

Courts will look at the effect and consequence in construing a doubtful or ambiguous statute, and will discard any construction which leads to unreasonable, foolish, or absurd consequences. Brown County v. Aberdeen, 4 Dak. 402, 31 N. W. 735; Lawrence County v. Meade County, 6 S. D. 528, 62 N. W. 131.

Unless wholly unavoidable, a construction of a statute will not be adopted that assumes an intention on the part of the legislature to do absurd, unjust, or useless things. Lawrence County v. Meade County, supra.

A statute is impliedly repealed by a subsequent one revising the whole subject-matter of the first. Keese v. Denver, 10 Colo. 112, 15 Pac. 825; Note in 4 L.R.A. 310; Note in 1 L.R.A. 362; State v. Cooper, 18 N. D. 583, 120 N. W. 878; First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836; United States v. Tynen, 11 Wall. 88, 20 L. ed. 153; United States v. Claflin, 97 U. S. 546, 24 L. ed. 1082; Code of 1877, Chap. XXI. § 6.

Where one statute is formed from another, some parts being omitted, the parts omitted are to be considered as annulled. Clay County v. Chickasaw County, 64 Miss. 534, 1 So. 753; United States v. Tynen, 11 Wall. 88, 20 L. ed. 153; Crowell v. Jaqua, 114 Ind. 246, 15 N. E. 242.

The Revised Codes of 1895 was new legislation. It was a change from old to new, and not a continuation of the old with amendments. Miller v. Norton, 22 N. D. 196, 132 N. W. 1080.

BURKE, J. The county of Dunn was organized January 17, 1908, by proclamation of the governor, who, at said time, named Manning as the temporary county seat, under § 3, chapter 63, Sess. Laws 1907,

now known as § 3193, Comp. Laws 1913.   Thereafter the government of the county was conducted at said place, the county owning a plat of ground upon which was located a courthouse, which was destroyed by fire about the 19th of January, 1914.   Since this date, rooms have been rented for the use of said county offices.   About the 6th day of August, 1914, a petition for the removal of the county seat from Manning to Dunn Center was submitted to the board of county commissioners, and acting thereunder an election was designated to be held upon the 3d day of November, 1914.   A canvass of the vote showed that Dunn Center had received 876 votes and Manning 507.   The county commissioners thereupon decided that the said proposition had not carried by a two-thirds vote as required by § 3236, Comp. Laws 1913.   This action is a writ of mandamus directed to such county commissioners seeking to compel them to certify Dunn Center the permanent county seat.   Relators contend that Manning is only the temporary county seat; that the governor was only given the authority under § 3193 to designate the location of the county seat until the voters themselves had permanently located the same by a majority vote.   It is their further contention that § 6, chapter 21, of the Political Code of 1877, is still in force and effect in this state (although not found in any of the laws after 1885), and thereunder the voters themselves have the right at the first general election at which county officers are chosen, to select and locate a permanent county seat.

(1) We will first discuss the question of the law under which the election of 1914 was held.   We will not in this opinion set forth all of the various enactments of the territorial and state legislatures of this commonwealth, as the same has been done in Miller v. Norton, 22 N. D. 196, 132 N. W. 1080.   Anyone interested in the subject will find the same exhaustively treated in such opinion.

. In such opinion, it is said: "The Revised Codes of 1895 was new legislation.   It was a change from old to new, and not a continuation of the old with amendments."   From said opinion we further quote: "The complete change in the statute generally, from that existing prior to 1895, is strongly indicative of legislative intent to depart from existing law and procedure.   This is strengthened when we find the entire new law was borrowed in all its unusual and peculiar features

from a sister state, and the former law supplanted thereby expressly repealed."

This view is also sustained by the following cases: Brown County v. Aberdeen, 4 Dak. 402, 31 N. W. 735; Lawrence County v. Meade County, 6 S. D. 528, 62 N. W. 131; Keese v. Denver, 10 Colo. 112, 15 Pac. 825; Notes in 4 L.R.A. 310, 1 L.R.A. 362; State v. Cooper, 18 N. D. 583, 120 N. W. 878; First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836; United States v. Tynen, 11 Wall. 88, 20 L. ed. 153; Crowell v. Jaqua, 114 Ind. 246, 15 N. E. 242. It is our conclusion, therefore, that chapter 21, Political Code 1877, has been long since repealed.

The election in dispute, therefore, was held under § 3233, Comp. Laws 1913, being § 2358, Rev. Codes 1895, amended by chapter 59, Sess. Laws 1907, and was an act for the *removal,* and not for the *relocation,* of said county seat. This is in harmony with Miller v. Norton, supra, wherein it is said: "In discussing the question involved in this opinion, we have designated our present statute as a removal, as distinguished from a relocation, statute. We have used these terms advisedly." Such being the case, Dunn Center must have received two-thirds of the vote cast to be entitled under the statute to the relief sought in this proceeding.

(2) Upon oral argument, relator for the first time insisted that, even conceding the repeal of chapter 21 of the Political Code of 1877, the voters of Dunn county had an inherent right to locate their own county seat by an *election,* and that they were not afforded this opportunity under the provisions of § 3193, Comp. Laws 1913. They reason further that having this inherent right to an election for the purpose of locating the county seat, that the election held in November, 1914, though in form a removal election, should be treated by this court as though it had been held for the relocation of the county seat. We do not believe this contention has any merit. The Constitution of North Dakota, §§ 166–173, bears evidence of the intent that the legislature should not thereafter create any counties or locate the county seat by special acts of their own, which had been the practice prior to that time. As a substitute for legislative creation, it was provided that the legislature should enact laws under which the people of the different counties might organize. Section 167 reads: "The

legislative assembly shall provide by general law for organizing new counties, locating the county seats thereof temporarily, and changing county lines. . . ." Section 169: "The legislative assembly shall provide, by general law, for changing county seats in organized counties, but it shall have no power to remove the county seat of any organized county." The legislature is thus commanded to provide laws whereunder the people of the county may organize the same. The legislature, in obedience to this mandate, has enacted § 3193, Comp. Laws 1913, which applies to territory which is for the first time being organized into counties, and reads: "Upon the granting of the petition for the organization of such county and within thirty days thereafter, the governor is empowered and it is hereby made his duty by written order to locate a temporary county seat therein *at such place as the greatest number of bona fide residents of such county shall designate by petition. . . .*" It has also provided at § 3208, Comp. Laws 1913, for new counties which are created by a division of an old county, which section reads: "The county commissioners of such county shall have power temporarily to fix the county seat and such location shall remain the county seat until the first general election thereafter when the qualified voters of such county are empowered to vote for and select the place of the county seat by ballot as provided by law. . . ."

Whether the legislature believed that new and unorganized territory which is about to be formed into a county has certain distinctions from old territory which is already settled up with full election machinery and the towns permanently located, we can only surmise, but that such a difference does exist is apparent in this case, where the county seat in the first place was named before any railroad was built, and now finds itself 12 miles inland. In any event, the legislature has seen fit to allow counties organized by division of an old county, to locate their county seat by *election* at the first general election held thereafter, while in the case of new territory to be formed into a county, no provision is made for such election, but the county seat is temporarily named by petition.

The relator contends that the legislature inadvertently failed to provide for the holding of an election for the location of county seats in counties created from unorganized territory. The respondents, on the

other hand, contend that such provision was intentionally omitted, and that the legislature intended to substitute a petition to the governor for such election. It is useless for us to speculate upon the reasons or motives which actuated the legislature in repealing the former law and enacting the present legislation on the subject. The duty of this court is to interpret, and not to make, laws. And we are all agreed that there is now no provision made under the laws of this state for such election, and this being so, it is self-evident that this court cannot by judicial fiat supply such legislation. If the present legislation on the subject is deemed inadequate, it can only be remedied by legislative action.

There is, moreover, another reason why relator may not prevail in this action. Even if his contentions were correct, and the voters of Dunn county had the right in the fall of 1914 to an election to determine the permanent county seat, the plainest principles of justice require that all towns of said county should have been given equal opportunity to become candidates thereat. By petitioning for a removal election, Dunn Center under such law eliminated all other candidates for the county seat, and only Dunn Center and Manning had their names printed upon the ballot. It would be a great injustice to other towns if, after such an election between Manning and Dunn Center, this court should, six months later, hold that such election was really a location election. Either one of these reasons necessitates a dismissal of the writ. The judgment of the trial court is in all things affirmed.