BYRON REED COMPANY, APPELLEE, v. ERNEST KLABUNDE ET AL., APPELLEES; MARY MANGOLD, APPELLANT.

FILED JUNE 8, 1907.   No. 14,376.

1. **Vendor and Purchaser:** QUITCLAIM. A purchaser of real estate, who takes by quitclaim deed, takes subject to all existing equities against the grantor.

2. **Wills:** PROBATE. The county court has original jurisdiction in the probate of a will, and its order admitting a will to probate is conclusive, unless by a direct proceeding, by appeal, or otherwise, it is reversed. *Loosemore v. Smith,* 12 Neb. 343, followed and approved.

3. **Trusts:** POWER TO MORTGAGE. Where a trust is created for the support and maintenance of the beneficiary, neither the trustee nor

54

the beneficiary has the power to assign or mortgage the trust estate, without such power is expressly conferred in the instrument creating the trust.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*J. J. O'Connor,* for appellant.

*Dexter L. Thomas, Hall & Stout, Paul L. Martin* and *Morning & Berge, contra.*

OLDHAM, C.

On November 3, 1888, Ernest Klabunde and his wife, Wilhelmina Klabunde, purchased an eighty-acre tract of land in Douglas county, Nebraska, from the Byron Reed Company, plaintiff in this action, and on March 16, 1891, they bought an adjoining sixty-acre tract from the same company. The title to the lands was taken in the name of Wilhelmina Klabunde, and the lands were occupied as a homestead by Ernest Klabunde and wife. As part of the purchase price of these tracts of land, three mortgages were executed to the Byron Reed Company for the respective sums of $1,350, $750 and $550. While these mortgages were unpaid, Wilhelmina Klabunde departed this life on the 11th day of February, 1894. After her death a paper, purporting to be the last will of the deceased, duly attested and witnessed as such, was offered and admitted to probate in the county court of Douglas county on the 10th day of March, 1894. There was no contest over the probate of the will, which was entered of record. The material provisions of the will, as probated and entered on the records of Douglas county, are as follows:

"I give to my son, August Klabunde, my home farm, where I now reside (describing it), all my household goods, four horses, two colts, four milch cows, ten head of young cattle, fifteen hogs, and all my farm machinery belonging to the farm, and now in my possession, with the

following condition: That my son, August Klabunde, shall give to Ernest Klabunde, my husband, a good home with board and $150 per year, during the natural term of Ernest Klabunde's life, and this shall be a mortgage on said above described premises, nor shall my son, August Klabunde, have a right to sell the within described real estate without the consent of my husband, Ernest Klabunde." August Klabunde, the beneficiary in this will, was the only child and sole heir at law of Wilhelmina and L..nest Klabunde. He married; and the father, Ernest Klabunde, made his home with him in harmony with the provisions of the will until June 26, 1896, when, as appears from the testimony in the record, August Klabunde and his wife drove the old man from the premises, and since then have utterly refused to comply with the provisions of the will.

On December 12, 1894, and after the death of Wilhelmina Klabunde and the probate of her will, August Klabunde and wife executed a mortgage on the real estate for $2,500, for the purpose of renewing and taking up the three mortgages which had been executed by Wilhelmina Klabunde and her husband as before set out. Ernest Klabunde joined in this mortgage, and the three prior mortgages were accordingly satisfied. At the same time a commission mortgage of $125 was executed to the Byron Reed Company for its commission on the renewal. On December 20, 1895, in payment of certain instalments of interest and certain taxes, a new mortgage for $450 was given to the Byron Reed Company to cover these items.

On the 30th day of April, 1896, a suit was instituted by the Byron Reed Company to foreclose this latter mortgage for $450, subject to the $2,500 mortgage, which had been indorsed for value to one George W. Cook, and the $125 commission mortgage. The Mangold & Glandt Bank of Bennington, Nebraska, was made a party defendant in this action, because it was the holder of a junior mortgage on the premises, executed by August Klabunde and wife alone. When this foreclosure proceeding was instituted,

defendant Ernest Klabunde called at the office of the
Byron Reed Company concerning the suit, and they ad-
vised him to go to their attorney and have an answer
prepared. This he did, and an answer was accordingly
prepared for him and filed, admitting the execution of the
mortgage sued upon and its priority as a lien over his
equity as provided in the will of his deceased wife. Judg-
ment was accordingly rendered and sale of the premises
had, the Byron Reed Company being the purchaser at the
sale, which was subsequently confirmed on the 22d day of
March, 1898, and no appeal was taken from the decree of
confirmation.

On December 7, 1898, the Byron Reed Company, by a
quitclaim deed, conveyed its interest in the property to
George M. Mangold; son of the cashier of the Mangold &
Glandt Bank, which had paid the amount of the claim of
the Byron Reed Company, and later paid the $2,500 mort-
gage owned by George W. Cook. On October 30, 1901,
George M. Mangold, at the request of Peter Mangold, ex-
ecuted a warranty deed purporting to convey the said real
estate to one Ed Wiese, then a tenant on the land, who in
turn executed a mortgage to the Mangold & Glandt Bank,
and, as a part of the same transaction, conveyed the prem-
ises to Mary Mangold, wife of Peter Mangold. These two
last mentioned deeds and the last mentioned mortgage
were held in escrow in the Mangold & Glandt Bank, and
neither delivered nor filed for record until the fall of 1903,
and after Ernest Klabunde had begun an action to set
aside the decree of foreclosure and the confirmation of the
sale on the ground of mistake and fraud, and filed a notice
of *lis pendens*.

On the 23d day of March, 1901, Ernest Klabunde com-
menced a suit in equity in the district court for Douglas
county against the Byron Reed Company, seeking to set
aside and vacate its decree of foreclosure and all proceed-
ings had thereunder, including the sheriff's deed to the
Byron Reed Company, on the ground of fraud and mis-
take. His petition was dismissed in the district court, but

on an appeal to this court, and on a rehearing of the cause, in an opinion delivered by HOLCOMB, C. J., 69 Neb. 126, the decree of the district court dismissing the plaintiff's bill was reversed, and a decree was entered here vacating and setting aside the decree of foreclosure and the sale had thereunder, and the cause was remanded for a new trial. When, in conformity with this mandate, a new trial was granted, amended pleadings were filed and all subsequent parties to the record were brought in. The Byron Reed Company filed an amended petition for the foreclosure of the $450 mortgage and alleged that it had conveyed all its interest in the premises by quitclaim to George M. Mangold, who in turn had conveyed to Weise, and Weise to Mary Mangold, who was alleged then to be the owner of the premises in controversy. Ernest Klabunde filed an answer and cross-petition in which he alleged the priority of his lien under the will of Wilhelmina Klabunde, and denied the execution and validity of the several mortgages executed after the probate of the will of his deceased wife. August Klabunde answered, denying the validity of the mortgages and alleging his interest in the land under the will of his mother. The Mangold & Glandt Bank answered, disclaiming interest, and alleging that their subsequent mortgage had been paid and satisfied by August Klabunde. George M. Mangold answered, alleging that he had conveyed all his interest in the premises to Wiese, and that Wiese in turn had conveyed to Mary Mangold. Wiese answered, alleging his conveyance to Mary Mangold and disclaiming further interest in the land. Mary Mangold answered, alleging ownership of the premises and her purchase for value without notice of the rights of Ernest Klabunde, and also setting up the fact that the land in controversy was never owned by Wilhelmina Klabunde, and that it was held by her in trust for Ernest Klabunde. She also alleged that the purported will of Wilhelmina Klabunde was a forgery written after the death of Wilhelmina Klabunde, and that its probate was procured by fraud and perjury. These allegations were denied by the reply of Ernest Kla-

bunde. On issues thus joined there was a trial to the court, and a judgment and decree, in which it was held that the Byron Reed Company and their successors in interest purchased with actual and constructive notice of the rights and equities of Ernest Klabunde; that the will, having been duly admitted to probate, was not subject to collateral attack by the Byron Reed Company or their successors; that the will created an inalienable trust estate upon the real estate in favor of Ernest Klabunde, and under its provisions Ernest and August Klabunde had no right or authority to execute any of the mortgages made by them after the probate of the will, but that the $2,500 renewal mortgage and the $125 commission mortgage and the $450 mortgage for interest and taxes, set up in the plaintiff's petition, represented renewals of valid mortgages which were on the said real estate at the time of the death of Wilhelmina Klabunde, and created in the holders thereof an equitable lien against said real estate, by way of subrogation, superior to the interests of both August and Ernest Klabunde. The court then rendered an accounting between Mary Mangold, as a mortgagee in possession, and Ernest and August Klabunde, and allowed her the face of the mortgages with 7 per cent. interest and taxes paid, amounting to $6,523.36, and charged her with the rents and profits of the land, while occupied by her, at the rate of $420 a year, making a total of rents and profits and interest to be deducted in the sum of $3,470.20, leaving a balance due of $3,053.16, which was declared to be a first lien on the premises. As between August and Ernest Klabunde, the court found that the terms of the trust had been violated and repudiated by August Klabunde, and found the amount due from him to his father under the terms of the will, and taxed the gross amount as a second lien on the premises, and the land was ordered to be sold to satisfy the first and second liens so found. To reverse this judgment and decree defendant Mary Mangold appeals to this court.

As the Byron Reed Company disclaimed any interest in

its amended petition, and the court properly found that
it had conveyed all its interest to the grantors of Mary
Mangold, it plainly has no cause for complaint in this
tribunal.  So we will only examine the decree so far as it
affects the rights of Mary Mangold.  In the brief filed in
her behalf, it is urged that the judgment and findings of
the court are erroneous in three particulars: First, in
holding that Mary Mangold bought with notice of the
rights of Ernest Klabunde; second, in determining the
rights of Ernest Klabunde under the will, which was
charged to have been a forgery; third, in treating the land
as having been the property of Wilhelmina Klabunde,
when it was in fact always the property of Ernest Kla-
bunde.  We will consider these alleged errors in the order
assigned in the brief.  It is conceded in the brief that,
when Mary Mangold took the deed to the premises and
paid the consideration therefor, she had constructive no-
tice by a *lis pendens* of the suit of Ernest Klabunde to set
aside the foreclosure decree.  But it is contended that the
Byron Reed Company had no notice of the claim of Ernest
Klabunde at the time it purchased at the foreclosure sale,
and the rule is invoked, which was recognized by this court
in *Snowden v. Tyler*, 21 Neb. 199, that "a purchaser *pen-
dente lite* from a purchaser who bought without notice,
and for a valuable consideration, may protect himself
under the first purchaser."  The rule announced is sound
in principle, but how can we now say that the Byron Reed
Company purchased at the foreclosure sale without knowl-
edge of the rights of Ernest Klabunde, in view of our
holding in this case at its former hearing, when we set
aside that sale for the very reason that a constructive
fraud had been practiced upon Ernest Klabunde by the
Byron Reed Company in procuring the decree of fore-
closure?  Again, the Byron Reed Company conveyed to
its grantee by quitclaim and not by warranty deed, and in
conveyances of real estate a quitclaim deed is of itself a
red light to warn the grantee that the rear end of the
transaction is exposed to equities.  *Arlington Mill & Ele-*

*vator Co. v. Yates,* 57 Neb. 286; *Bowman v. Griffith,* 35 Neb. 361; *Pleasants v. Blodgett,* 39 Neb. 741.

Passing then to the second question, which is as to the right of Mary Mangold to assail collaterally the validity of the will of Wilhelmina Klabunde, it is plain that Mrs. Mangold could not have assailed or contested the probate of the will in the county court, because she was not a party in interest in the controversy. And, again, if she had been a party in interest, she could not, after the will had been admitted to probate, assail the decree in a collateral matter. In *Loosemore v. Smith,* 12 Neb. 343, it was held:

"The county court has original jurisdiction in the probate of a will, and its order admitting a will to probate is conclusive, unless by a direct proceeding, by appeal, or otherwise, it is reversed."

This case was cited with approval in the recent case of *Williams v. Miles,* 63 Neb. 859, and is conclusive of the question that a will duly admitted to probate is not subject to collateral attack.

With reference to the third objection that the property was always, in fact, the property of Ernest Klabunde, we think that it does not lie in the mouth of defendant, who holds her equities as the successor of the Byron Reed Company, to assert such a defense. The land was purchased from the Byron Reed Company and deeded by it to Wilhelmina Klabunde. The original mortgages were taken from her and her husband in recognition of her ownership of the fee. The land, when purchased, was occupied as a homestead and was not a subject of fraudulent conveyance between husband and wife. It is not necessary to decide whether or not, under the terms of the trust created in the will of Mrs. Klabunde, the property could have been conveyed by deed by the son, even if the father had joined in the conveyance. But it is clear to us that the trial court properly held that, under the provisions of the will, there was no authority conferred on the trustee to incumber the trust estate by mortgage, even by consent of the father, who was the *cestui que trust.* In 1 Perry, Trusts, sec. 386*a*,

it is said : "If a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities and is in other respects legal, neither the trustees, nor the *cestui que trust*, nor his creditors or assignees, can divest the property from the appointed purposes." And it is generally held that, where a trust is created for the support and maintenance of the beneficiary, neither the trustee, nor the beneficiary, has the power to assign or mortgage the trust estate without such power is expressly conferred in the instrument creating the trust. *Bloomer v. Waldron,* 3 Hill (N. Y.), 361; *In re Hoyt,* 5 Dem. Sur. (N. Y.) 432; *Meek v. Briggs,* 87 Ia. 610, 43 Am. St. Rep. 410; *Willis v. Smith,* 66 Tex. 31, 17 S. W. 247; *Stokes v. Payne,* 58 Miss. 614, 38 Am. Rep. 340.

We are therefore of the opinion that all the rights and equities of the appellant were fully protected and enforced in the judgment and decree of the district court, and we recommend that the judgment be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.