LUSK, et al, Appellants, v. CITY OF YANKTON, et al
(CITY OF YANKTON, Respondent).

(168 N. W. 375).

(File No. 4296.   Opinion filed June 25, 1918.)

1.  **Trials—Error—Quieting Title—Judgment on Findings of Pre-scriptive Title—Subsequent Plat Excluding Ground, Effect, Immateriality on Appeal.**

    Where, in a suit to quiet title involving a strip of ground included in original uncertified plat, but excluded from a subsequent certified plat, the judgment was based upon findings of fact of title by adverse possession, the question of dedication growing out of a filing of the plats becomes immaterial on appeal.

2.  **Real Property—Title By Adverse Possession—Leasing, Licensing, Granting Rights of Way, as Evidence of Ownership—Sufficiency of Evidence.**

    Where a city commenced exercising open and notorious acts of ownership and control of the litigated ground, by leasing and giving licenses to many persons to occupy same with storage houses and other buildings, and by granting rights of way across same, and by using parts thereof for gravel and sand pits, such continuous acts of ownership and control during more than a period of twenty years, confer ownership by adverse possession; and the evidence supports findings accordingly.

3.  **Conveyancing—Notice of Title—Possession After Previously Acquiring Prescriptive Title, As Notice to Adverse Claimant.**

    Where the owner of realty, previously acquired by adverse possession under the twenty-year statute, was in actual possession at time of execution of a quitclaim deed thereto by one claiming adversely, such possession was notice to the world of the owner's title so previously acquired.   So held, as against persons claiming through conveyance by corporation grantee under a quitclaim deed, said last grantees being officers and stockholders of the quitclaim grantee.

4.  **Conveyancing—Claimant Through Quitclaim Title—Quitclaim Deed as Danger Signal, As Notice of Adverse Equities.**

    A quitclaim deed is a danger signal, and charges those claiming under it with notice of all outstanding adverse equities.   So held, as against an adverse title previously acquired by prescription under the twenty-year statute.

5.  **Real Property—Ownership by Prescription, Notice of—Subsequent Acts of Adverse Possession, Whether Necessary.**

    After having perfected title to realty by twenty years exclusive adverse possession, it was not then incumbent or necessary on the part of the owner to continue perfecting and completing same from year to year, in order to hold title thereto

so completely acquired, nor to longer remain in actual posses-
sion in order to retain or protect title; since the only way in
which such owner could thereafter lose or divest himself of
such title would be by proper alienation, or by some third per-
son thereafter acquiring title by adverse possession, or by some
clair acts amounting to an estoppel to claim such title.

6.    Quieting Title—Title by Adverse Possession, Re-entry and Pay-
    ment of Taxes by Original Owner, Effect re Prescriptive Title
    —Estoppel.

    The fact that the original owner of land re-enters and pays
taxes will not affect a prior acquired title by adverse possession.

7.    Same—Taking Adverse Possession—Notice to Keep Off, and
    Claiming Ownership, Effect, re Adverse Entry—Estoppel.

        Where parties claiming ownership through title by quit-
claim deed undertook to take possession of realty, and held
adversely to the municipal owner for a short time, but the own-
er notified such claimants and their predecessors in interest to
keep off the land, and claimed at all times during such adverse
claim, to be the owner, and instructed its attorney to take
proper steps to protect its title, such owner did not estop itself
from claiming title as against such adverse claimants, who were
not innocent parties without notice of the owner's rights.    Nor
was the city shown to have estopped itself from claiming title,
by evidence that some of the city officials were stockholders of
the corporation grantee in the quitclaim deed, and might have
been interested in the city losing its title.    Held, further, that
said adverse claimants in attempting to take possession were
trespassers, and could gain no equities thereby, short of twenty
years' open, notorious and continuous trespass, or by ten years'
adverse possession and payment of taxes under color of title.

8.    Same—Redemption from Mortgage Sale by Losing Party, Whether
    Equity Requires?

        In a suit to quiet title against an owner through prescriptive
right, held, that equity will not require such owner, the pre-
vailing party, to reimburse the adverse claimant for money paid
by it in redemption from a foreclosure sale under mortgage of
the land by an intermediate adverse claimant; it would be
highly inequitable to require it should do so; the evidence show-
ing that such adverse claimants became trespassers in attempt-
ing to take adverse possession against owner's notice to keep
off the land.

9.    Same—Previous Municipal Ownership by Prescription, Municipal
    Tax Assessment and Payment, as Affecting—Estoppel.

    The fact that municipal taxes were levied for four successive
years by taxing officers of a city owning the land in litigation,
and that such taxes were thereafter paid by parties claiming
adversely under a quitclaim deed, did not estop the city from

claiming, or having, title thereto by prescription based on its former more than twenty years' adverse possession; at least ten years payment of taxes under adverse color of title being necessary to establish an adverse title.

Smith, J., taking no part in the decision.

Appeal from Circuit Court, Yankton County. HON. ROBERT B. TRIPP, Judge.

Action by W. C. Lusk, W. J. Fantle, and D. B. Gurney, against the City of Yankton and others, to determine adverse claims of title to realty. From a judgment in favor of defendants, and from an order denying a new trial, plaintiffs appeal. Affirmed.

*Harry Kunkle,* and *French, Orvis & French,* for Appellants.

*Joseph Janousek,* for Respondent.

(9) To point nine of the opinion, Respondent cited:

Seattle v. Hinkley ('Wash.) 121 Pac. 444.

McCOY, J. This action was brought to determine adverse claims of title to a certain parcel of land lying between the Missouri river and First street of Todd's plat of the city of Yankton, the same being a strip of land varying in width from 130 feet to 225 feet, 3 blocks in length, commonly known in the city of Yankton as the "levee." Findings and judgment were in favor of defendants, from which judgment the plaintiffs appeal.

[1] Among other findings of fact the court found that for more than 40 years prior to 1914 the city of Yankton had been in exclusive, hostile, open, notorious, continuous, and adverse possession of said land, presumptively with the knowledge of plaintiffs' grantors and predecessors in interest. Appellant contends that the court erred in its conclusion of law that the defendant city of Yankton had acquired absolute title to said real estate by such adverse possession, for the reason that there are no findings of fact sustained by the evidence that would warrant or justify such conclusion of law. It appears from the evidence preserved in the record that the title to the tract of land comprising Todd's plat to the city of Yankton between 1860 and June 5, 1868, was in much doubt. On the 5th day of June, 1868, a patent for said land, including the strip of land in dispute, was issued to J. B. S. Todd; that on the 21st day of August, 1868, said Todd made and file a plat dividing said tract of land into city lots, blocks, streets, and avenues, thereby dedicating the said streets and avenues to the public use of the city of Yankton, and on the said plat so filed on the

21st day of August all·that strip of ground lying immediately south
of the south end of blocks 2, 3, and 4, and extending to the Mis-
souri river, was designated as First street, thereby making a wide
street varying in width from 210 to 305 feet; the said plat so filed
on the 21st day of August contained no surveyor's certificate as
to the correctness thereof as required by the then existing law. One
week later, on the 28th day of August, 1868, the said Todd with-
drew from record the said plat theretofore filed by him on the 21st
day of August for the purposes of corrections and alterations, and
on the said 28th day of August made and filed another plat duly cer-
tified by a surveyor as to the correctness thereof and with the
alteration appearing thereon that immediately south of said blocks
2, 3, and 4 was a street 80 feet in width designated as First street,
and thereby leaving the strip involved in this suit excluded and
outside the plat then so filed by him.    One of the contentions of
respondent is that the land in question was by said plat filed on
August 21st dedicated to the city of Yankton as the part of a
street, and that the subsequent withdrawal of said plat and filing
of another a week later could not and did not affect the dedication
so made, and that thereafter the city of Yankton and the public
accepted said dedication, and by reason thereof has ever since been
the owner of and entitled to the use and control of the whole of
said strip of land between the Missouri river and the south end of
said blocks 2, 3, and 4.    For the reason that the trial court has
based the conclusions of law and judgment solely upon the find-
ings of fact as to respondent's 40 years of exclusive, continuous,
adverse possession of said land, the question of said dedication
growing out of the filing of said plats becomes immaterial and a
matter not necessary to a proper determination of the issues involv-
ed on this appeal, and we shall therefore only consider the question
of adverse possession and the title obtained thereby by respondent.

[2] It appears from the record that as early as August, 1872,
the city of Yankton commenced exercising open and notorious acts
of ownership and control over the strip of land in question by
leasing and giving licenses to many persons to occupy the same
with storage houses and other buildings, by granting rights of way
across the same, and by using parts thereof for gravel and sand
pits and other purposes. Such open, notorious, exclusive, and con-
tinuous acts of ownership and control by respondent, while possibly

not lasting 40 years, were, however, continuous at all times from August, 1872, up to and including the year 1907, and being a period much longer than 20 years necessary to obtain full and complete title by adverse possession. We are therefore of the opinion, and so hold, that at the time of the beginning of this action the respondent city was the absolute owner by adverse possession of said land, and that the findings of the court in this relation were fully sustained by the evidence. It appears from the record that in the year 1907 one Josephine Moore, a daughter and heir of said Todd, acquired by deeds all the interest of all the other heirs of said Todd, then deceased, in and to the lands in question, and that she thereafter in 1910 instituted proceedings in probate by virtue of which the lands in question were distributed to her and to all other heirs of said Todd of whom she had obtained said deeds; that on the 14th day of November, 1912, the said Josephine Moore by quitclaim deed conveyed the land in question to the Yankton Pressed Brick Company, and on the 5th day of August, 1915, the Yankton Pressed Brick Company by warranty deed conveyed said land to plaintiffs; that on the 14th day of November, 1912, the same date on which said Josephine Moore conveyed said land to the said brick company, the said brick company gave to her a mortgage for $1,500, evidently either a portion or all of the purchase money coming to her as consideration for said conveyance; that thereafter the said brick company failed to pay said mortgage indebtedness, and upon a foreclosure of said mortgage said Josephine Moore became the purchaser at such foreclosure sale, and thereafter, on the 18th day of May, 1915, the said brick company redeemed the said property from such foreclosure sale. It will be noticed that Josephine Moore by a quitclaim deed conveyed her interest in said land to the said brick company on November 14, 1912.

[3] At that time the respondent city was in the actual possession of said land, which was notice to the world of its title which it had long prior thereto acquired by completed and fully ripened adverse possession. The plaintiffs in this case were officers and stockholders of the brick company, and had notice of respondent's title at the time they received said deed and at the time they made redemption from said mortgage sale, for the reason that at

said times the respondent was in possession claiming title to this land, which gave notice to the world of respondent's rights.

[4] Another circumstance is also sufficient to put the brick company and plaintiffs upon inquiry and notice, namely, the plaintiffs and said brick company knew that the brick company acquired title, if any, through a quitclaim deed from Josephine Moore. This is one of the instances where a quitclaim deed is a danger signal and charges those claiming under it with notice of all outstanding adverse equities.    39 Cyc. 1693; Parker v. Randolph, 5 S. D. 549, 59 N. W. 722, 29 L. R. A. 33, and note; Fowler v. Will, 19 S. D. 131, 102 N, W. 598, 117 Am. St. Rep. 938, 8 Ann. Cas. 1093.   In the case of Byron Reed Company v. Klabunde, 76 Neb. 801, 108 N. W. 133, the court said:

"A quitclaim deed is of itself a red light to warn the grantee that the rear end of the transaction is exposed to equities."

[5-7] The respondent city long prior to any claim of title on the part of the Pressed Brick Company or plaintiffs had perfected and acquired full and complete title to this land by adverse possession.  After having so perfected title by 20 years' exclusive adverse possession, it was not then incumbent or necessary on the part of respondent to still keep on perfecting and completing the same from year to year in order to hold the title theretofore already completely acquired by such 20 years' adverse possession.  After a person has fully and completely acquired title by 20 years' adverse possession, it is not then necessary for such person to longer remain in actual possession in order to retain or protect his title. The only way a person who has so acquired complete title by adverse possession can thereafter lose or divest himself of such title is by alienation in writing or by some third person thereafter acquiring title by adverse possession as against him, or by some clear acts or conduct amounting to an estoppel to claim such title. 2 C. J. 256-259.  The fact that the original owner of the land reenters and pays taxes will not affect a prior acquired title by adverse possession.  Cramer v. Walker, 23 Idaho, 495, 130 Pac. 1002. The facts in this case do not show that respondent city by writing or any other act transferred or surrendered title of this land to plaintiffs or to any of plaintiff's predecessors in interest, or in any manner whatsoever recognized or by conduct or otherwise estopped itself from claiming title as against said brick company or plaintiffs.

The record does show that the brick company and plaintiffs undertook to take possession and held adversely to respondent for a short time, but the findings and evidence show that the respondent notified plaintiffs and their predecessors in interest to keep off this land, and that respondent at all times during the adverse claim of plaintiffs and said brick company claimed to own this land, and instructed its attorney to take proper steps to protect its title. Therefore we are of the view that respondent has in no manner estopped itself from claiming full and complete title as against appellants who are not innocent parties without notice of respondent's rights. There is some evidence to the effect that some of the city officials were stockholders in said brick company and might have been interested in the city losing its title. But by no lawful act of the officials of respondent city authorized to act for it did it ever by any kind of conduct estop itself from claiming title to said land. After the respondent city had acquired title by fully ripened adverse possession it could only divest itself of title by some method of lawful alienation. Under the circumstances the acts of Josephine Moore and the brick company and plaintiffs were wrongful and hostile as against the respondent. They were trespassers on respondent's rights, and could gain no equities by such wrongful acts or such adverse possession short of 20 years' open, notorious, and continuous trespassing, or by 10 years' adverse possession and payment of taxes under color of title, none of which was ever done. 2 C. J. 256.

[8] Some contention is made that respondent, as a matter of equity, should reimburse plaintiffs for the redemption money paid. In the first place, plaintiffs did not pay said redemption money, but the record shows that the same was paid by the brick company, and in the second place it would be highly inequitable to require the respondent so to do. If respondent was compelled to reimburse the plaintiffs for the amount of this redemption money, it would thereby be compelled to pay all or a large part of the value of this land in order to retain its title thereto. Considering the fact that neither the plaintiffs nor the brick company were innocent purchasers without notice of respondent's rights, but were wrongdoers and trespassers, it would not be possible or equitable that respondent should thus be deprived of title or full right to this property

to which it had become the absolute owner long prior thereto by lawful adverse possession.

[9] It also appears from the record that said land in question was assessed for taxes for the years 1913, 1914, 1915, and 1916, by the taxing officers of respondent city, and that such taxes were thereafter paid by the said Pressed Brick Company, or these plaintiffs. We are of the view that the assessment of taxes and the receipt of taxes on said land for said years by the taxing officers of said respondent city in no way estops or precludes it from claiming or having title to said land by prescription based upon its former more than 20 years' adverse possession. Cramer v. Walker, supra. Under the provisions of section 54, Code of Civil Procedure, it would require at least 10 years' payment of taxes under adverse color of title to establish title in plaintiffs and their predecessors by adverse posssesion and payment of taxes.

All assignments of error having been considered, and finding no error in the record, the order and judgment appealed from are affirmed.

SMITH, J., took no part in this decision.