2000 SD 29

**CITY OF DEADWOOD, a South Dakota municipal corporation, and Deadwood Historic Preservation Commission, Plaintiffs and Appellees,**

v.

**SUMMIT, INC., Defendant, Third–Party**

**Plaintiff and Appellant,**

v.

**D.D. Industries, a corporation, and G.E. Derosier and Yvonne L. Derosier, Third–Party Defendants.**

No. 21028.

Supreme Court of South Dakota.

Argued Jan. 12, 2000.

Decided Feb. 23, 2000.

Jon W. Mattson, Deadwood, South Dakota, Attorney for plaintiffs and appellees.

Veronica Bowen and Joseph M. Butler of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, South Dakota, Attorneys for defendant, third-party plaintiff and appellant.

GILBERTSON, Justice

[¶ 1.] This appeal stems from a quiet title action initiated by City of Deadwood and Deadwood Historic Preservation Commission (City) against Summit, Inc. (Summit). The circuit court entered judgment in favor of City and found it had established ownership by (a) adverse possession; (b) boundaries by acquiescence; and (c) reformation of the deeds by which Summit acquired the disputed four lots of property. Summit appeals. We affirm in part and reverse in part.

**FACTS AND PROCEDURE**

[¶ 2.] The disputed property in this case involves four lots in Deadwood, South Dakota. The historic Adams house is located on Lots 11, 12, 13 and 14, Block 41, Original Townsite, Deadwood, Lawrence County, South Dakota. City is the current record owner of these lots. Summit is the current record owner of Lots A, B, C and D, Block 41, and other property which adjoins the Adams house. The eastern portion of Lots A, B, C and D are the focus of this dispute. (See attached exhibit showing the real property involved and the shaded area in dispute).

[¶ 3.] The Adams house was originally built in 1892. The house, along with its Lots 11 through 14 and adjoining Lots A through D were conveyed to W.E. Adams in 1920. Lots 11 through 14 and the east portion of Lots A through D are separated from the west part of Lots A, B, C and D by a ten to twelve foot high rock wall which generally runs east and west. According to a 1903 map of the City of Deadwood, the wall appears to have been built in 1903 originally to serve as a retaining wall.

[¶ 4.] In 1948 Lots A and B were transferred from the Adams family to Donald Derosier's father. Donald Derosier (Derosier) received title to these lots when his father conveyed them to him. At the time Lots A and B were conveyed to Derosier's father, he used the building located on the western portion of Lots A and B in connection with his automobile dealership. In 1991, Derosier conveyed Lots A and B to Summit.

[¶ 5.] The Adams house was built on Lots 11 through 14, with the garage, patio and a section of the porch of the house extending onto the east portion of Lots A and B. A small section of the porch extends onto Lot C as well. The Adams family continuously used and maintained these areas from 1920 until 1987. In September of 1987 Mary Adams conveyed Lots 11 through 14 to Bruce Crosswait. In 1992, Crosswait transferred his interest in the lots to City. From 1987 until he sold the property to City, Crosswait continued to use the garage, patio and porch. City has maintained Lots 11 through 14 and beginning in the fall of 1998 commenced a restoration and renovation project of the Adams house.

[¶ 6.] Lots C and D were owned by the Adams family until 1989 when the property was sold to D.D. Industries, a corporation solely owned by Derosier. These two lots had previously been leased to the Derosier family beginning in 1949. The Derosiers operated an automobile dealership on Lots A, B, C and D from 1948 until 1989, when it was sold to Jerry Mitchell and Andy Knott under a Contract for Deed. Summit took possession of the property in 1990 after it purchased Mitchell and Knott's interest and agreed to purchase

Lots C and D from Derosier, which had been leased to Mitchell and Knott. On October 3, 1991, Derosier conveyed Lots C and D to Summit by warranty deed which included the area east of the rock wall. Summit converted the automobile dealership into a casino and restaurant.

[¶ 7.] Since acquiring the lots in October of 1991, Summit has been the record owner of Lots A, B, C and D. In 1993, Summit had a survey performed of the boundary line between Lots A, B, C and D and Lots 11 through 14. The survey established that an area east of the rock wall was within the boundaries of Lots A, B, C, and D. The survey showed the true boundary to include a portion of Lots A, B, C and D containing approximately .06 acres east of the rock wall. Since 1989, both Summit, its predecessors and City's predecessors in title have paid real estate taxes on portions of the disputed area.

[¶ 8.] City brought an action in Lawrence County circuit court to quiet title to the eastern parts of Lots A, B, C and D.[1] City based its quiet title action on claims of (1) adverse possession; (2) implied easement; (3) acquiescence in boundaries; and (4) the right to reform the deed conveying the property to Summit. The circuit court entered findings, conclusions and judgment in favor of the City, thus quieting title to the eastern portion of Lots A, B, C and D in the City. Summit now appeals raising the following issues for our consideration:

1. Did the assessment and collection of real property taxes by City preclude it from claiming title by adverse possession to Lots A, B, C and D.

2. Did the circuit court err in granting City's adverse possession claim as to Lots C and D.

3. Did the circuit court err in reforming the deed from Derosier to Summit.

1. The City sought in the alternative to condemn the property if it was unsuccessful on its quiet title claim. This claim is still pending.

## STANDARD OF REVIEW

[¶ 9.] "Proof of the individual elements of adverse possession present questions of fact for the trial court, while the ultimate conclusion of whether they are sufficient to constitute adverse possession is a question of law." *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D.1994) (citing *Lien v. Beard*, 478 N.W.2d 578, 580 (S.D.1991)). We review the circuit court's findings of fact under the clearly erroneous standard. *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204 (citing *Rabenberg v. Rigney*, 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (citing *In re Estate of O'Keefe*, 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139)). "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Id.* "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them." *Lewis*, 522 N.W.2d at 3 (citing *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 421 (S.D.1980)). Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law. *Sherburn v. Patterson Farms, Inc.*, 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citing *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771).

## ANALYSIS AND DECISION

[¶ 10.] **1. Did the assessment and collection of real property taxes by City preclude it from claiming title by adverse possession to Lots A, B, C and D.**

[¶ 11.] The only issue which applies to Lots A and B in this appeal is the assessment and collection of taxes.[2] Summit

2. Summit concedes on appeal that the City and its predecessors in title (Adams and Crosswait) possessed and occupied the eastern part of Lots A and B for twenty years. Sum-

argues since the City collected real property taxes on Lots A, B, C and D it cannot now claim title to these lots by adverse possession. The record indicates both Summit and City's predecessors were paying taxes on some portions of the disputed property. The circuit court found neither Derosier nor Summit had paid any taxes on the garage located east of the rock wall. The circuit court also found Summit has been paying taxes to a greater portion of Lots A, B, C and D than that west of the rock wall.

■ [¶ 12.] This Court's decision in *Lusk v. City of Yankton*, 40 S.D. 498, 168 N.W. 375 (1918), controls this issue. In *Lusk*, the disputed land was assessed for taxes by the taxing officers of the city. *Id.* at 378. The plaintiff company, which had paid all of the taxes, challenged the city's adverse possession claim because of its receipt of taxes. *Id.* We held the assessment and collection of taxes by the taxing officers of the city in no way precluded it from claiming or having title to the land by prescription based upon its adverse possession for more than twenty years. *Id.* Thus, City is not estopped from bringing a quiet title action by adverse possession in this case.

[¶ 13.] We affirm the circuit court's judgment as to Lots A and B. Therefore, we will only address the subsequent issues as they relate to the disputed portions of Lots C and D.

[¶ 14.] **2. Did the circuit court err in granting City's adverse possession claim as to lots C and D.**

■ [¶ 15.] SDCL ch. 15–3 contains the statutes dealing with adverse posses-

sion. Summit is the record owner of the disputed portions of Lots C and D. Under SDCL 15–3–7, Summit is presumed to have been possessed of the property within the time required by statute (twenty years) unless someone else can prove adverse possession for that period of time prior to the commencement of the action. *Cuka*, 294 N.W.2d at 421–22. "The burden of proving title by adverse possession is upon the one who asserts it." *Id.* at 422 (citing *Broadhurst v. American Colloid Co.*, 85 S.D. 65, 74, 177 N.W.2d 261, 266 (1970)). City, therefore, must prove it adversely possessed the land for at least twenty years so as to obtain title. "In such an action ... where the objective of the litigant is to establish an interest in land that is inconsistent with the record title, his proof must be stronger, more intense or of a higher degree than is required in ordinary litigation...." *Id.* (citing *Lenker v. Musilek*, 75 S.D. 60, 62, 59 N.W.2d 417, 418 (1953)). Thus, "[p]roof of adverse possession must be supported by 'clear and convincing' evidence." *Lewis*, 522 N.W.2d at 3 (citing *Lien*, 478 N.W.2d at 579).

■ [¶ 16.] In South Dakota, property is subject to adverse possession when it has been actually and continuously occupied under a claim of title exclusive of any other right. SDCL 15–3–12.[3] A person may claim title to property which he or she has adversely held, even though he or she does not have claim to the title upon a written instrument; however, the property in question must either have been protected by a "substantial inclosure" or must have been "usually cultivated or improved."[4] *Schultz v. Dew*, 1997 SD 72,

---

mit also does not dispute there were adjoining landowners as to Lots A and B and that they acquiesced in the rock wall as the boundary for twenty years.

3. SDCL 15–3–12 provides:

Where it shall appear that there has been an actual continued occupation of premises under a claim of title *exclusive of any other right,* but not founded upon a written in-

strument, or a judgment, or a decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely. (emphasis added).

4. SDCL 15–3–13 provides:

For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, or judgment, or decree, land shall be deemed

¶ 12, 564 N.W.2d 320, 323. The traditional elements of adverse possession require the "actual, open, visible, notorious, continuous and hostile" occupation of the property for the statutory period. *Lewis,* 522 N.W.2d at 3 (citing *Estate of Billings v. Jehovah Witnesses,* 506 N.W.2d 138, 141 (S.D. 1993)).

[¶ 17.] In this case, the circuit court found the ten to twelve foot high rock wall serves as a physical boundary separating the Adams house property from Summit's casino property. The circuit court also found City and its predecessors in title had continuously used, possessed and maintained the eastern portion of Lots C and D since 1949. However, the circuit court did not characterize the possession of City or its predecessors as "adverse." Summit correctly points out that there could be no finding of adverse possession between 1949 and 1987, because the disputed area was occupied and possessed by the same record owner, the Adams family. This evidence is undisputed. Indeed, it is the very essence of "adverse possession" that the possession be inconsistent with the record title. Summit concedes the possession by City and Crosswait of the eastern portion of Lots C and D was adverse beginning in 1987. However, Summit argues this is not a sufficient length of time to establish adverse possession because there has not been possession for the statutory period of twenty years. Instead the possession by City and Crosswait of the eastern portion of Lots C and D has only existed for twelve years. We agree with Summit and reverse as to this cause of action.

[¶ 18.] *Doctrine of acquiescence in boundaries.*

[¶ 19.] Summit argues the circuit court erred when it quieted title in favor of City to the eastern portion of Lots C and D

to have been possessed and occupied in the following cases only:
(1) Where it has been protected by a substantial inclosure; or

under the doctrine of acquiescence in boundaries. The circuit court ruled that based on the evidence, Summit and its predecessors in interest due to a mistake, had acquiesced in City's occupation, use and possession of the property and recognized and acquiesced in the rock wall separating the eastern and western portions of Lots C and D as the boundary line.

[¶ 20.] The evidence in this case is not sufficient for City to prevail on the theory of acquiescence in boundaries. The burden of proving a boundary by the doctrine of acquiescence is identical to the strident standard required for proving adverse possession. One claiming property to the exclusion of the true owner through the doctrine of acquiescence bears the burden of proving the action by clear and convincing evidence. *Manz v. Bohara,* 367 N.W.2d 743, 748 (N.D.1985) (citing *Trautman v. Ahlert,* 147 N.W.2d 407, 413 (N.D. 1966)); *see also Dowley v. Morency,* 1999 ME 137, 737 A.2d 1061, 1067 (Me.1999) (noting one must prove a contrary boundary under the doctrine of acquiescence by clear and convincing evidence); *Stone v. Rhodes,* 107 N.M. 96, 752 P.2d 1112, 1114 (N.M.App.1988) (explaining that in order to prevail under the doctrine of acquiescence, a party must show by clear and convincing evidence that after a period of time he and his neighbor recognize a physical boundary as the true dividing line of their property).

[¶ 21.] Summit argues that in South Dakota, the doctrine of acquiescence in boundaries is merely a potential component of adverse possession—not an independent legal doctrine. City claims in response the doctrine is distinguishable and independent from the doctrine of adverse possession because the statutory twenty-year period is presumed by the acquiescence by all parties to such boundary. We agree with Summit.

(2) Where it has been usually cultivated or improved.

[¶ 22.] This doctrine was recognized in South Dakota as early as 1918, in *Lehman v. Smith*, 40 S.D. 556, 168 N.W. 857 (1918). In *Lehman*, this Court stated "[t]he question of adverse possession may be conclusively determined by the length of time during which there has been acquiescence in a disputed boundary. When such acquiescence continues during the statutory period prescribed as a bar to reentry, title may be acquired through acquiescence alone." *Id.* at 859. This Court in *Lewis*, 522 N.W.2d at 5 stated: "[t]his doctrine provides an evidentiary presumption of hostility to the occupation of property to a 'visible and ascertainable boundary' *for the statutory period.*" 522 N.W.2d at 5 (emphasis added). The doctrine gives an evidentiary presumption as to the element of hostility and applies even though the occupancy occurred due to ignorance, inadvertence, or mistake, and without an intention to claim the lands of another. *Lien*, 478 N.W.2d at 580. This doctrine does not eliminate the necessity that adjoining landowners must acquiesce in the boundary for twenty years but merely provides that such acquiescence furnishes the element of hostility necessary for adverse possession. ". . . [N]othing short of acquiescence for the statutory period required for acquisition of title by adverse possession will establish a boundary line by acquiescence." *Production Credit Assoc. v. Terra Vallee, Inc.*, 303 N.W.2d 79, 85 (N.D. 1981) (citing *Odegaard v. Craig*, 171 N.W.2d 133, 137 (N.D.1969)).

[¶ 23.] In South Dakota, if the landowner can show both adjoining property owners mistakenly believed in the location of a boundary line, the element of hostility will be satisfied for purposes of a claim of adverse possession. However, the applicable time period of twenty years possession must still be established.

[¶ 24.] In South Dakota, although there is no statute specifically addressing acquiescence, it appears the period of occupancy under the doctrine of acquiescence is the same as that for adverse possession, twenty years.[5] *See Sullivan v. Groves*, (1919) 42 S.D. 60, 172 N.W. 926 (holding where adjoining landowner entered into possession under claim of title and under misapprehension as to the true boundary, and continued in possession for twenty years, there was adverse possession); *Labore v. Forbes*, 59 S.D. 12, 238 N.W. 124 (1931) (holding where there had been continuous possession for twenty years by plaintiff and predecessor in interest who entered into possession of land under a mistaken belief as to the true boundary there was adverse possession); and *Taylor v. Tripp*, 330 N.W.2d 542 (S.D.1983) (holding where occupancy of land beyond true boundary line was actual, open, visible, notorious, continuous for twenty years and hostile in other respects, it was adverse even though the occupancy took place due to mistake).[6]

---

5. With respect to acquiescence, some jurisdictions have statutes specifically setting the minimum necessary time of occupancy. Lawrence Berger, *Unification of the Doctrines of Adverse Possession and Practical Location in the Establishment of Boundaries*, 78 Neb. L. Rev. 1, 17 n. 50 (1999) (citing Iowa Code Ann. § 650.14 (West 1995) (setting the minimum time of occupancy at 10 years); Neb. Rev. Stat. § 34–301 (Reissue 1998) (setting the minimum time of occupancy at 10 years)). Other states require the same period as the statute of limitations for adverse possession. *Id.* at 17 n. 51 (citing *Sackett v. Atyeo*, 217 Mich.App. 676, 552 N.W.2d 536 (1996) (citing Mich. Comp. Laws 600.5801(4)); *Lakeview Farm, Inc. v. Enman*, 166 Vt. 158, 689 A.2d 1089 (1997) (citing Va Code Ann. § 501)). Finally, some courts mandate acquiescence for a "long period of years." *Id.* at 17 n. 52 (citing *Davis v. Mitchell*, 628 A.2d 657, 660 (Me.1993)).

6. Even in those jurisdictions which recognize the doctrines of adverse possession and acquiescence as distinct legal doctrines, a requisite period of acquiescence is required. *See Engquist v. Wirtjes*, 243 Minn. 502, 68 N.W.2d 412, 416 (1955) (noting a finding of acquiescence in a practical location is independent of adverse possession except for the time limitations involved); *Shoemaker v. Houchen*, 994 S.W.2d 40, 45 (Mo.App.1999) (explaining that although acquiescence and adverse possession are separate legal doctrines, once acquiescence has been proven, possession becomes adverse, and the statutory period for adverse

[¶ 25.] Lots C and D were leased to the Derosier family by the Adams from 1949 until 1989, when the lots were finally sold to Derosier. Thus, Derosier did not have actual ownership of Lots C and D until 1989 when fee title passed to him. This Court stated in *Lehman,* "[t]he rule that the presumption of an agreement fixing a division line is conclusive, where both parties have been in possession and use of *their respective lands* up to a dividing line such as a fence...." 168 N.W. at 859. (emphasis added). The phrase "their respective lands" implies the acquiescence must be by adjoining landowners. This Court also stated in *Lewis,* "[t]hus, when *adjoining land owners* mistakenly assume that a fence line forms the boundary between their properties, and the legal titleholder acquiesces in his neighbor's occupation of the land, the possession is presumed adverse." 522 N.W.2d at 5. (emphasis added).

[¶ 26.] The Adams family owned Lots C and D until 1989 when conveyed to Derosier and Lots 11 through 14 until 1987 when conveyed to Crosswait. The only adverse interest City relies on is the Adams' "hostile possession" to the rights of Derosier under the lease. However, we do not agree with City's argument because there must be twenty years of adverse possession as to an owner, not a leaseholder. City has not provided us with any statutory or legal authority indicating otherwise. We agree with Summit's argument that the trial court erred when it included the period of Derosier's possession pursuant to the lease with the Adams. Per SDCL 15–3–8, a tenant's possession is deemed that of the landlord's. SDCL 15–3–8 provides:

> Whenever the relation of landlord and tenant shall have existed between any persons the possession of the tenant shall be deemed the possession of the landlord until the expiration of twenty years from the termination of the tenancy; or, where there has been no written lease, until the expiration of twenty years from the time of the last payment of rent, notwithstanding that such tenant may have acquired another title, or may have claimed to hold adversely to his landlord. Such presumptions shall not be made after the periods herein limited.

*See also Holtzman v. Douglas,* 168 U.S. 278, 283, 18 S.Ct. 65, 67, 42 L.Ed. 466, 468 (1897) (recognizing for the purpose of acquiring title by adverse possession, the possession of the tenant is regarded as that of his landlord and does not break the continuity of the landlord's possession). We find no evidence in the record that at any time did the Adams family agree or assume that Derosier was the owner of the eastern portion of Lots C and D until he received a deed for the property in 1991. Thus, it was not until 1991 there were "adjoining landowners." Therefore, there simply was no acquiescence in the rock wall boundary by adjoining landowners for twenty years to meet the statutory requirement of adverse possession.

[¶ 27.] We construe the doctrine of acquiescence in boundaries to hold that the occupancy of adjoining landowners must satisfy the statutory period for adverse possession of twenty years. "To conclude otherwise would only serve to encourage aggressive, assertive action across boundary lines, and not good neighborliness." *Manz,* 367 N.W.2d at 748. We agree with the court's statement in *Finley v. Yuba County Water District,* 99 Cal.App.3d 691, 160 Cal.Rptr. 423, 429 (1979):

> [This doctrine] .... is not intended to subvert neighborliness or prudence whereby a neighbor allows another to use part of his land for the neighbor's (or their mutual) benefit, and this concept grows in importance as we progres-

possession begins to run.); *Conduff v. Stone,* 968 S.W.2d 200, 204 (Mo.App.1998) (explaining the theory of an agreed boundary line is a distinct theory from that of adverse posses-

sion, in that an agreed boundary line may be proved by acquiescence in a fence as a boundary for a sufficient period of time).

sively become a more congested society. Therefore, the mere fact that a landowner allows his neighbor to occupy or use part of his land does not automatically fix the boundary between them or give the neighbor a right to use or take the property in perpetuity.

[¶ 28.] After a review of the record, we find there has not been acquiescence in

the rock wall as the boundary by adjoining landowners for twenty years. There has only been adverse possession or acquiescence in the rock wall as the boundary by the parties in this case for twelve years, far short of the statutory time period.

[¶ 29.] **3. Did the circuit court err in reforming the deed from Derosier to Summit.**

[¶ 30.] City's reformation cause of action is based upon SDCL 21–11–1, which provides:

> When through fraud or mutual mistake *of the parties,* or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value. (emphasis added).

The circuit court, at the request of the City, reformed the deeds by which Summit received Lots A, B, C and D to eliminate the eastern portion of Lots A, B, C and D from these deeds. Summit argues the circuit court erred when it granted reformation of the deed to City, because City was not a party to the 1991 deeds from Derosier to Summit or in privity with the parties to the deeds. City responds the reforma-

tion cause of action was based upon and supported by Derosier's testimony, and that Derosier was a party to this action. Thus, although Derosier did not formerly request reformation, it was for his benefit as well as the City. Also, City argues, its predecessors, Adams and Crosswait, have been in privity with Derosier through the sale and lease to Derosier and the continued occupation and possession of the area east of the rock wall. We agree with Summit.

■ ■ ■ ■ [¶ 31.] To be entitled to reform a deed one must be a party to or in privity with a party to the deed. *Longley v. Knapp,* 713 A.2d 939, 944 (Me.1998); *Beasley v. Mellon Fin. Serv. Corp.,* 569 So.2d 389, 394 (Ala.1990); *Taylor v. Peterson,* 133 Colo. 218, 293 P.2d 297, 299 (1956); *Lachner v. Swanson,* 251 Pa.Super. 561, 380 A.2d 922, 925 (1977). "Courts will not interpose on behalf of persons who are neither parties to the instrument sought to be reformed nor claiming any rights or privity thereunder." *Taylor,* 293 P.2d at 299; 66 Am.Jur.2d *Reformation of Instruments* § 60; 76 CJS *Reformation of Instruments* § 49. None of the real parties to the chain of title in this case, Summit, Derosier, or D.D. Industries requested the trial court to reform the 1991 deeds. Thus, the circuit court erred when it reformed the deeds at the request of the City, which was not a party to the deeds or in privity with a party to the deeds.[7]

## CONCLUSION

[¶ 32.] We conclude the circuit court erred in determining City proved its claim of adverse possession by clear and convincing evidence and the doctrine of boundaries by acquiescence was satisfied in this case. The circuit court also erred when it reformed the deeds at the request of a non-party, the City. The City still has the option of pursuing its claim for condemnation under its power of eminent domain.

---

**7.** Because of our resolution of this issue, we need not reach the issue of whether the reformation of the deeds vested title in the City. Further, City apparently concedes this portion of the question in its brief when it admits that:

"[a]lthough Summit would appear to be correct in its argument, this issue may be cured by a subsequent deed from Derosiers to City, which City believes that Derosier would willingly execute."

Affirmed in part and reversed in part for proceedings consistent with this opinion.

[¶ 33.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.