## LABORE, Appellant, v. FORBES, Respondent.

### (238 N. W. 124.)

(File No. 6848.   Opinion filed October 5, 1931.)

*E. F. Green,* of DeSmet, and *Gardner & Churchill,* of Huron, for Appellant.

*Howes & Temmey* and *Luby & Gartland,* all of Huron (*Chas. P. Warren,* of Huron, of counsel), for Respondent.

ROBERTS, J.   The plaintiff is the owner of the northwest quarter, and the defendant is the record owner of the northeast quarter, of section 4 in township 112, range 57, Kingsbury county. These are fractional quarters; the government patent describes the northwest quarter as containing 198.92 acres, and that for the northeast quarter describes it as containing 198.94 acres.

In the fall of 1925 defendant caused a survey to be made of the boundary line between the two quarters.  The line fixed by this survey places in each quarter the approximate acreage described in the patents. The north end of the boundary line fixed by the 1925 survey is marked by an iron stake on the northern boundary line of the section, and the south end is marked by an iron pipe which is claimed by the defendant to be at the center of the section. Plaintiff claims by adverse possession a strip of land lying east of the boundary fixed by the survey, extending six rods and eleven and one-half feet east of the iron stake marking the north end of the 1925 survey line and fourteen rods and two feet east of the iron pipe at the south end.   The disputed strip concededly lies within the northeast quarter, and the sole issue is whether plaintiff established ownership thereto by adverse possession.

The old line which plaintiff claims as a boundary line is marked by a strip of unbroken land averaging about a rod in width along which rocks have been piled.  In 1902 a fence was built along the north end of this unbroken strip, extending at least ten rods in length, by one William Jackson who made homestead entry to lot 3 and later received a government patent thereto.   Jackson moved a house to the northeast corner of his homestead, planted trees to the east of the house, and cultivated the land between the trees and the fence as a garden.   The boundary line as established by the survey of 1925 runs within fourteen to sixteen feet of this house upon plaintiff's land and through the grove of trees east of

the house. The plaintiff purchased lot 3 from one Henry Gonsted in November, 1908. Gonsted became the owner and went into possession of this tract of land in the summer of 1904. Gonsted during his occupancy and until he surrendered his possession to the plaintiff claimed and retained possession over to the unbroken strip. The plaintiff purchased the south half of the northwest quarter and lot 4 in section 4 in January, 1905, and in March of the same year went into possession. In the spring of the same year he plowed the east end of the south half of the northwest quarter, and this extended to the unbroken strip. Since the purchases in 1905 and 1908, the plaintiff was in continuous and uninterrupted possession of the northwest quarter of section 4, including the disputed strip, until the fall of 1925. After the survey was made in September of that year the defendant attempted to take possession of the land in controversy. Defendant then removed the fence along the unbroken strip, and constructed a fence along the line fixed by the survey.

Plaintiff testified on cross-examination that he had some controversy with Mr. Forbes relative to this boundary line some nine or ten years prior to the trial. At that time defendant's son Tom, who owned the southwest quarter of the section, adjoining plaintiff on the south, desired to have the line between him and plaintiff straightened. Defendant was present at the time and stated that he also wanted to have the line between him and the plaintiff straightened, and it was agreed they would do it the following Sunday. Plaintiff testified that it was "discernible to the eye that this line run in a northwest direction from the south side. I don't remember but I probably did tell Mr. Forbes I didn't want any of his land. What I wanted was my own land in that conversation about ten years ago. What I wanted was the true line and I supposed I had it when I bought the land and I had it. I don't want his land. I want to get up to where I bought. I claimed the land was where I claim it now. I supposed I got up to the line."

Relative to this conversation defendant testified: "I told him that the line wasn't right and I wanted to have it surveyed or measured up, and I told him there we could do it ourselves but he was breaking and said he hadn't time, he didn't want to stop breaking. He wanted to sow a piece of flax. He said if I would come down Sunday, him and I would measure it up and that he

didn't want any of my land—he didn't want a foot of it. I told him all right, I didn't want any of his, but the line wasn't right. I went home. Next Sunday I drove down to Labore's. He wasn't at home. I did not do any measuring that day. Possibly a couple of weeks later I talked with him again at his place. He said there was no rush about it, that we would tend to it, he had to cultivate his corn, and he had no time to fool around with no lines. That was about all that was said."

The trial court found in substance that plaintiff was in possession of the tract in controversy under a misapprehension as to the true line, and that plaintiff did not intend to acquire title to any of defendant's land. Judgment was entered for the defendant, and the plaintiff appeals from the judgment and order denying motion for new trial.

■■ It is not necessary that the property should have been in the possession of the same person for the whole statutory period of twenty years to establish adverse possession. The possession of successive occupants may be tacked together if there is privity between them. Privity exists between two occupants when possession is acquired by voluntary transfer of title or possession. There was privity as to lot 3 from the time of the possession by Jackson to the acquisition of title by the plaintiff. The question does not arise as to the remaining portion of the northwest quarter of section 4.

■■ The plaintiff and his predecessors in interest entered into possession, occupied, cultivated, and improved the land in controversy under a mistaken belief as to the true boundary. In Sullivan v. Groves et al., 42 S. D. 60, 172 N. W. 926, this court held where an adjoining landowner enters into possession under claim of title and under misapprehension as to the true boundary, and continues in possession for twenty years, there is adverse possession within the provisions of section 2284, Rev. Code of 1919, which refers to entry under claim of title under a written instrument or decree, notwithstanding the land extends beyond the calls of the occupant's deed. The fact, therefore, that the strip of land in dispute was not within the calls of the deed transferring title to the plaintiff, was not sufficient to defeat the claim of adverse possession. Where the possession has been continuous under the circumstances mentioned, the presumption under

section 2283, Rev. Code 1919, is overcome and adverse possession is established, unless by affirmative proof or admission it is shown that for a part of the time at least possession was not adverse and was subordinate to the true owner.

■ ■ The defendant relies upon testimony that plaintiff admitted that the fence was not on the true line and that he agreed to have a survey made to establish the true boundary to show that the possession of the plaintiff was not adverse. Physical exclusion of all others under a claim of right within the meaning of section 2284, Rev. Code 1919, is the sole test of adverse possession. Sullivan v. Groves et al., supra. Respecting statutes similar to those in this state, the Supreme Court of Wisconsin, in Ovig v. Morrison, 142 Wis. 243, 125 N. W. 449, 451, says: "The necessity for the system which is written into our Code in order to avoid confusion and uncertainty on the subject of adverse possession, is significantly illustrated by the claim here made and another, which, until recent years, was often dignified as legitimate and is yet disturbing in the administration of justice. On the one hand it was claimed that adverse possession would not be grounded on possession as owner under mistake of boundaries, while on the other it was claimed that such possession must, to be effective, be characterized by good faith. The result was the theory that if a person, as owner, maintained exclusive, continuous occupancy by the location of his building or otherwise, partly within and partly without his true line, according to his paper title, for 20 years or any greater length of time, he was still in danger of being dispossessed of the latter portion because, if his occupancy was by mistake of boundaries, that was fatal to his claim of title, and if he intended to claim as owner regardless of the true boundary, or knowing that he was a trespasser, that was bad faith and likewise fatal to his title. It is obvious that the only sensible, safe and really equitable rule is to make the physical characteristics of possession, excluding all other persons, the sole test of adverse possession, and so it was written in the Code. It has been lost sight of at times. Experience has demonstrated, clearer and clearer, as time has progressed and the importance of stability of titles has grown with increase in value of property, the wisdom of the Code makers in incorporating into their work the simple test of adverse possession indicated." See also Tiffany, Real Property (2d Ed.) § 505.

The defendant prior to the fall of 1925 and before the survey was made never attempted to acquire possession of the strip of land in dispute, nor was there any acknowledgment by the plaintiff of his right to take possession. The defendant never exercised any dominion over the land in controversy during the period mentioned. Under the evidence presented, the defendant clearly could have maintained no action under section 2280 or section 2281, Rev. Code 1919, for the recovery of the property at the time of the commencement of the present action, for the reason that he had not been seized or possessed of the land in question within the preceding twenty years.

The judgment and order appealed from are reversed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.