STATE OF MISSOURI at the relation of EUGENE L. CRUTCHER, Relator, v. EDMOND KOELN, as Collector of the City of St. Louis.—61 S. W. (2d) 750.

Court en Banc, June 16, 1933.

1230

*McDonald & Just* for relator; *Charles M. Hay, J. Wesley McAfee* and *M. P. Phillips* of counsel.

*Charles J. Dolan* for respondent.

HAYS, J.—This is a petition for mandamus, brought by the relator, a delinquent taxpayer owning real estate in the city of St. Louis, to compel respondent, the collector of revenue of that city, to accept under the direction of an act of the Fifty-seventh General Assembly, known as Senate Bill No. 80 (hereinafter referred to for convenience as No. 80), approved April 13, 1933, and in effect on that day under its emergency clause, the original amount of taxes assessed against the relator's real estate for the years 1930, 1931 and 1932 and relieved of all penalties, interest and costs on each such assessment.

Respondent entered his appearance; service of alternative writ was waived by stipulation; respondent's return to the petition as a writ was filed; and relator moved for judgment on the pleadings.

The substance of respondent's return is the following: That, having receipted to the comptroller of said city for the full amount of relator's delinquent tax bills, issued by the comptroller upon the occurrence of the delinquencies, respectively, showing (1) the original assessments, (2) certain charges of the comptroller and (3) interest on such assessment at the rate of one per cent per month for the three months ending March 31, after the respective delinquencies attached; that respondent has been charged by the comptroller with the amount of said delinquent bills, and has been charged with interest at the rate of one per cent per month on each of said bills from March 31 of the year in which the same became delinquent, and with two per cent of the original amount of such assessments, as respondent's commission thereon; and that respondent will be personally responsible for each of these charges and items and will be liable also for the penalty of Section 9928 of the Revised Statutes of Missouri of 1929, if he accepts relator's tender.

Further, that No. 80, on which relator relies, is not a valid law of the State, and, if valid, does not apply to said city, and if it does so apply it does not affect his two per cent commission on the bills, because it violates several provisions of our State Constitution, as hereinafter stated, and because, if valid, it cannot operate on delinquent city and school taxes in said city by reason of Senate Bills Nos. 110 and 115 passed by said General Assembly and applying sole to said city.

Before going into the constitutional questions involved it may be well to consider the purpose of No. 80 and how and upon what it would operate if valid. Its declared purpose is to be accepted as true, and should be effectuated if that can be done without

offending against the organic law. This purpose is immediate relief from delinquent taxes of all persons on whose property taxes remained delinquent on January 1, 1933, as shown on the official tax books or tax bills. Such relief was declared to consist in the remission of ''penalties, interest and costs'' and to be conditioned upon the payment of the original (the assessed and levied) amount of said taxes as charged.

The compensation of all county collectors has for many, many years been governed by statute and fixed by graduated scale based upon a classification of the various counties (the city of St. Louis being regarded as a county), according to the total taxes levied in them respectively for any one year. The present statute fixing the compensation for collecting current taxes is Section 9935 of the Revision of 1929. By Subsection XIV of that section the collector of said city, for the collection of all back or delinquent taxes, is allowed a *commission of two per cent*, which shall be added to the face of the tax bill and ''collected from the party paying such taxes *as a penalty* in the manner as other *penalties* are collected and enforced.'' (All italics ours.) Section 9914 of said revision provides that when taxes have become delinquent the county collector shall ''collect and account for, as other taxes, an additional tax, *as penalty*, of one per cent per month upon all (delinquent) taxes collected by him.'' Under Subsection XIV the two per cent commission of the collector on collection of delinquent taxes is to be accounted for along with the commission on current taxes in settlements required to be made by him with the proper officer (the city comptroller) and annually on the first Monday in March. Out of the residue of such commission in his hands, after deducting salaries and expenses of his office, the collector shall be allowed to retain, as far as said residue will permit, a compensation of $10,000 per annum. It is also provided in other sections of the statutes, not necessary to be designated, relative to delinquent taxes, that certain other persons shall be allowed certain fees incident thereto, which in every instance are required to be taxed as costs and collected from the party redeeming and paid as other costs. But it is expressly provided that in no instance shall the State, county or city be liable for any such compensation, fees or costs.

Inasmuch as the Session Acts of 1933 have not yet been published we here set out Senate Bill No. 80 (title and enacting clause omitted) :

''Sec. 1. In payment of the taxes assessed against any person whose name appears upon the personal delinquent lists of any year or years prior to January 1, 1933, and in payment of the taxes assessed against any real estate which appears upon the lists of delinquent and back taxes of any year or years prior to January 1, 1933, includ-

ing delinquent taxes for the year 1932, the collectors of revenue of the counties and cities of this state are hereby empowered and directed to accept the original amount of said taxes as charged against any such person or real estate relieved of the penalties, interest and costs accrued upon the same; provided, however, that such remission of penalties, interest and costs shall be in full if said taxes are paid not later than June 30, 1933; if paid after June 30, 1933, and not later than August 31, 1933, then such remission shall be seventy-five per cent of such penalties, interest and costs; if paid after August 31, 1933, and not later than October 31, 1933, such remission shall be fifty per cent of such penalties, interest and cost; if paid after October 31, 1933, and not later than December 31, 1933, then such remission shall be twenty-five per cent of such penalties, interest and costs: Provided, further, that after December 31, 1933, all penalties, interest and costs as aforesaid shall be restored and be in full force and effect for the full period of time since their accrual and as if this act had not been passed.

"Sec. 2. The provisions of this act shall cease and be of no effect after January 1, 1934.

"Sec. 3. As the expeditious collection of such taxes and lists is necessary for the maintenance of the state institutions and for the support of public schools, an emergency exists within the meaning of Section 57 of Article 4 of the Constitution of this state and also an emergency exists within the meaning of Section 36 of Article 4 of the Constitution of this state, and this act shall be in force and take effect from and after its passage and approval by the Governor."

We are now in a position to take up the questions arising on this record. Beginning with respondent's contention that No. 80 is contrary to Section 12 of Article IX requiring uniformity in the provisions of any law regulating the fees of county officers and permitting a legislative classification of the counties, in (1) that it does not expressly refer to respondent's two per cent commission, but only to "penalties, interest and costs;" (2) that if it does apply thereto it would deprive him of the sole source of compensation for himself, his deputies and of incidental expenses until current taxes become due at the end of the current year, and would have a like effect upon all county collectors of the State.

No reason is assigned in respondent's brief or argument as to how the result which he suggests would render the act unconstitutional. We think the argument is a mere conclusion and begs the question. The allegations of the return, upon which the argument is predicated, are more diffusive but, like the latter, are in substance mere conclusions. But however that may be, we cannot perceive how such result would bring the act into conflict with this constitutional pro-

1236

vision. With reference to point (1), it is true that the word "commission" does not appear in the act. But we think for reasons presently to appear, that the compensation now under consideration is included in the phrase "penalties, interest and costs" as is also the compensation of all other persons whose services are, as already stated, incidental to delinquent taxes and their collection. It seems clear that No. 80, if it includes respondent's commission, as we think it does, applying by express terms, as it does, to all collectors in the counties and cities of the State and to their fees, operates uniformly throughout the State and therefore fully satisfies the constitutional requirement of uniformity of operation. [State ex rel. O'Connor v. Riedel, 329 Mo. 616, 627, 46 S. W. (2d) 131.]

Near the beginning of this discussion we gave attention to the compensation fixed by statute for the various persons having to do with delinquent taxes, after the delinquency has occurred, and with the collection and enforcement of such taxes. Thus far we have viewed the compensation in its relation to its recipient as fees. We will now consider the several imposts as laid by statute upon the property of the delinquent, in their relation to the delinquent. Unquestionably they impose a duty, moral and legal, upon him in the interest of the public welfare. He is required to pay them, whatever the names they bear; they are imposed upon his property as a punishment to him as well as for the purpose of general deterrence of delinquency. They are essentially of a penal nature, since they imply punishment. They are, one and all and indiscriminately, "costs" to the delinquent. Also by statutory classification the respondent's "commission" of two per cent on delinquent taxes collected is "penalty" as against the relator, required to be added to the tax bill and collected from the party paying such tax *"as a penalty in the same manner as other penalties are collected and enforced."* Thus the penalty exacted of the relator is by the statute (Sec. 9935) required to be accounted for by the respondent along with the interest penalty of one per cent per month imposed by Section 9914, supra. These observations apply also to the city comptroller's fee of twenty-five cents per tract provided for and required "to be taxed as costs and collected from the party redeeming such tract." Not only is the fee an incident and part of the penalty exacted from the delinquent, but considered as costs *eo nomine* it is essentially penal. It is said in 15 Corpus Juris at page 19, right column: "In their origin costs were known as a punishment of the defeated person . . . rather than as a recompense to the successful party. . . . The latter theory obtains . . . in the legislation in regard to it." In volume 7 of Ruling Case Law, page

780, it is stated that, "The terms 'fees' and 'costs' are sometimes used interchangeably as having the same application." "Strictly speaking the two terms are not synonymous. The term 'costs' includes fees and reimbursements consisting of fixed and unalterable amounts previously specified by laws, regulations or tariffs," etc. [12 C. J. p. 21, top 1, col.] It follows that as used in the chapter on Taxation in the Revised Statutes the expressions "commissions," "interest," "fees" and "costs" are included in the generic term "penalty."

With regard to what may be called the interest penalty this court en banc, in Seaboard National Bank v. Woeston, 176 Mo. 49, l. c. 62, 75 S. W. 464, held, that the statute (now Sec. 9941) does not change the character of the imposition; that it is not an "additional tax" at all, for regarded as a tax it would or possibly might be illegal, as the amount of the taxes that the Constitution permitted had already been levied; and that it is not "interest" in any proper sense, because it is a penalty imposed for a failure to discharge a duty that can be lawfully demanded. [See, also, Levee District v. Dorroh, 316 Mo. 398, l. c. 410-413, 289 S. W. 925; 4 Cooley on Taxation (4 Ed.) sec. 1821, p. 3573; State ex rel. Gold Mines v. Superior Court, 93 Wash. 433, 161 Pac. 77; Jones v. Williams (Sup. Ct. Tex.), 45 S. W. (2d) 130, 136, and cases there cited.] And the same rule applies to other burdens imposed by statute for the nonpayment of delinquent taxes, which being in the nature of penalties (State ex rel. v. Coos County, 115 Ore. 300, 237 Pac. 678, 679; Colby v. Medford, 85 Ore. 485, 487, 167 Pac. 487; Jones v. Williams, supra), clearly come within the broad scope of the word "penalties," which is defined as "An exaction in the nature of a punishment for the nonperformance of an act, or for the performance of an unlawful act; and involving the idea of punishment, whether enforced by a civil or criminal action or proceeding." [Law Dictionary, Ballentine, p. 948; Hall v. Norfolk & W. Railroad Co., 44 W. Va. 36, 41 L. R. A. 669, 28 S. E. 754.]

Another contention of respondent is that the act in question contravenes Section 3 (requiring uniformity in the taxes levied upon the same class of subjects) and Section 4 (requiring all taxable property to be taxed in proportion to its value) of Article X.

In support of his contention the respondent argues in substance that the act would destroy the uniformity of "burden of taxes" to which it relates, that no provision is made to restore uniformity by refunds to those who have already paid delinquent taxes together with the penalties, and no provision made for differentiating between delinquent taxpayers who are needy and those merely shiftless. Evidently the argument proceeds upon a misconception as to what constitutes taxes in the proper sense. We have already pointed

out that the penalties affected are not part of the tax. The tax is presumed to have been uniformly and properly imposed. Both the tax and the "burden" thereof remain without change. The State is under no obligation to refund taxes or penalties, or both, once they have been paid. Besides, all questions of public policy involved in legislation rest in the discretion and power of the Legislature except insofar as such power is limited by our own or by the Federal Constitution. It would seem to follow that the constitutional requirement that "all taxes shall be levied and collected under general law operating uniformly throughout the states" does not apply to these charges, but is restricted to measures which seek to raise revenue, and have no application to burdens which are not, properly speaking, taxes. [37 Cyc. Taxation, p. 731; Livesay v. DeArmond (Ore.), 284 Pac. 166, 68 A. L. R. 422.]

We have now reached the respondent's main contention, namely, that the act under review contravenes Section 51 of Article IV of our Constitution, which prohibits the Legislature from passing any law releasing or extinguishing or authorizing the releasing or extinguishing in whole or in part of any indebtedness, liability or obligation of any corporation or individual to this State or to any county or other municipal corporation therein.

With regard to this constitutional limitation the respondent takes the position, that the words "indebtedness, liability or obligation" refer particularly to taxes; that under the law of Missouri a tax levied on real or personal property is a liability of the owner; that No. 80 releases such owner from liability for taxes duly imposed and that the enactment therefore not only for such reason of liability, but for the further reason that it is retrospective in its operation, violates said limitation. Respondent cites in support of that thesis the cases State ex rel. v. Snyder, 139 Mo. l. c. 552, 41 S. W. 216; Land & Improvement Co. v. Kansas City, 293 Mo. l. c. 678, 239 S. W. 864; Graham Paper Co. v. Gehner, 332 Mo. 155, 59 S. W. (2d), l. c. 52, and cases from several other states. The case last mentioned so holds. But an examination of each of the cases discloses that they dealt with taxes eo nomine imposed in the usual way and by the constituted authorities for the raising of taxes for revenue.

No. 80, viewed in the light of the legislative purpose in its enactment, and for our purpose of determining the question of the act's validity, we assume its purpose as accomplished; that is to say, we regard the penalties as wholly disassociated and segregated from the original tax, to which it was a mere adjunct. The question now before us is, therefore, not one as to which of successive owners of property should discharge the taxes impressed thereon at a given date, as in State ex rel. v. Snyder, supra, and Land & Improvement Co. v. Kansas City, supra. Nor is it really a question of the act

being retrospective as to the original taxes under this provision, a question which was in judgment in the Graham Paper Company case, supra. That was a case in which an amendatory statute purported to change the basis of levy of certain income taxes leviable annually on the whole net income of the taxpayer. The amendment went into effect July 3, 1927, changing the basis of levy in such way as to result in a reduction of the tax "for the calendar year 1927." The controversy was upon whether the tax for the whole of that year was separable, so as to diminish the tax proportionately for that portion of the year preceding July 3, the effective date of the amendment, or a unit covering the entire year. It was held to be separable. It is to be noted that the tax had been levied before the amendment became effective. There it was held in effect, as in the other cited cases, that, the process of taxation having been completed, "the burden of the taxes (was) already incurred" and had become a liability within the purview of said constitutional provision. We think the cases just referred to are distinguishable from the present case on essential questions involved and are without application here.

Penalties are a mere adjunct, of a nature quite different from taxes as already shown, and are provided merely as an aid in enforcing the collection of the latter. Notwithstanding they may be indicated on the back tax books or tax bills, they are no more than inceptive down to the moment of their infliction by actual exaction and receipt of payment, or by distraint had or judgment obtained. [12 C. J. p. 973, sec. 556.] Do they come within the purview of the constitutional provision supra? The operative words relied upon by respondent to bring them within such purview are "indebtedness, liability or obligation."

These words are found grouped together. In applying the maxim "Noscitur a sociis," we may take it that such coupling together shows that the words are to be understood in the same general sense and are to be regarded as of the same nature. And under the rule "ejusdem generis" they cannot be deemed to include matters or things of a nature different from their own. They are defined thus in a recent work (Law Dictionary, Ballentine, 1930) : Obligation, "To bind or tie up, to engage by the tie of a promise or oath, or form of law;" liability, "The state or condition of a person after he has breached his contract or violated any obligation;" indebtedness, "Liability by one person to pay money or other thing of value to another."

So liability seems to denote an obligation become fixed, and indebtedness the translation of the fixed obligation into terms of money or property. "Liability," as used in said Section 51, bears no perceptible implication of punishment. On the other hand, as has been pointed out, "penalty" necessarily bears that implication; and the

cognate words it is usually associated with,—"fines and forfeitures" —bear the same. "The terms 'fine,' 'forfeiture' and 'penalty' are often used loosely and confusedly. But when discrimination is made the word 'penalty' in its strict sense, is found to be generic in its character, including both fine and forfeiture." [12 R. C. L. p. 207.]

Another clause of our Constitution, Subsection 22, Section 53 of said Article IV, prohibits the enactment of any special or local law remitting "fines, penalties and forfeitures." It seems clear that this group of words is totally unrelated in signification to the group first discussed. It is evident that if both said Subsection 22 and Section 51 relate to the same subject there would be a duplication, for Section 51, if all inclusive, would render the Subsection of 53 superfluous and nugatory. But under established rules of construction the courts should resolve seemingly conflicting or overlapping provisions of the Constitution by harmonizing them and rendering every word operative, if possible, so as to give effect to the whole. Applying that rule, and also the rule that the Legislature possesses all legislative powers not prohibited by the Constitution, expressly or by necessary implication, we are of the opinion that from the express limitation contained in said subsection, prohibiting the remission of fines, penalties and forfeitures by special law, a necessary implication arises that general laws on that subject are not prohibited by the Constitution but are within the fundamental powers just referred to, and of opinion also that said Section 51 does not, by express words or by necessary implication, prohibit the remission of fines, penalties or forfeitures by general laws. [Barnett v. A. & P. Railroad Co., 68 Mo. 56, 1. c. bot. p. 63; Wellshear v. Kelley, 69 Mo. 1. c. pp. 354-355; Jones v. Williams (Tex.), 45 S. W. (2d) 130, 79 A. L. R. 983; Commonwealth v. Standard Oil Co., 101 Pac. 119; Livesay v. DeArmond, 131 Ore. 563, 284 Pac. 166; State ex rel. v. Coos County, 115 Ore. 300, 237 Pac. 678; State ex rel. v. Superior Court, 93 Wash. 433, 161 Pac. 77; Per Contra: Sanderson v. Bateman, 78 Mont. 235, 253 Pac. 1100; Louisville Car Wheel, etc., Co. v. Louisville, 146 Ky. 573, 142 S. W. 1043.] (Note: The constitutional provisions construed in Jones v. Williams, supra, are substantially identical with Section 51 and Subsection 22 of Section 53, Article IV of our Constitution, and the provisions dealt with in the Montana and Kentucky cases were also like our Section 51. The opinion in the Jones case is an exhaustive and well-considered one and deals with many of the questions here at bar.)

This brings us to the assignment relative to the effect had by the special statutes referred to, Nos. 110 and 115. which although passed at the same session were passed earlier than No. 80, all three with emergency clauses.

No. 110 purports to amend the chapter on taxation and revenue

and expressly repeals all acts or parts of acts in conflict with such amendment. It in effect applies to the city of St. Louis only, and in substance provides that all general taxes for school and city purposes delinquent for 1931 and prior years may be paid in whole or in installments of at least twenty-five per cent of such tax prior to January 1, 1935, at the face amount of the tax plus six per cent interest per year from date of delinquency. After deducting legal fees and costs the remainder is to go to the school board or the city, and if the amount to be paid as fees and costs exceeds the interest then the latter shall offset the former, without further interest penalty.

No. 115, with repealing and emergency clauses similar to those of No. 110, in effect applies to said city and provides that all delinquent general taxes for school and city purposes for 1932 and thereafter may be paid in whole or in installments of at least twenty-five per cent with interest on the amount paid at two-thirds of one per cent per month from date delinquency, without additional fees for collection or attorney's charges.

As we understand relator's position, he imputes no special infirmity to either of the special acts and relies on the rule, applied when appropriate, that all the acts being *in pari materia* and passed at the same session, if they cannot be construed together because of irreconcilable repugnancy as between No. 80 and the others, No. 80 being the later act, should prevail. The respondent, on the other hand, takes the position that there is no conflict and the special acts should operate as exceptions to the general act, No. 80; this also being under an established rule of construction. The emergency clauses of each of the acts are by the parties conceded—at least tacitly—to be adequate, in form and substance, to meet the constitutional requirements governing emergency clauses. The whole purpose of the many and harmonious rules of statutory construction is said to be to aid in arriving at the intention of the Legislature, as ascertained from the enactment itself, by calling in aid such of the rules as appear to have special application to the particular statute under consideration. In furtherance of such purpose we adopt and apply in this case a rule, or combination of rules, expressed in the following quotation: "While the rule is that a general affirmative act, or the general provisions of an act, without express words of repeal, ordinarily will not repeal or affect a previous special or local act on the same subject, yet it is not a rule of positive law, but one of construction only; a special act may be impliedly repealed by a general one and the question whether it has been so repealed is always one of legislative intention." [Schott v. Continental Auto. Ins. Co., 326 Mo. 92, 31 S. W. (2d) 7; 59 C. J. sec. 536.] "The special act is not repealed unless a different intent is plainly manifested, *or where the two acts are irreconcilably inconsistent* or repugnant, or where the

1242

*general act covers the whole subject matter* of the special one .. . .
*or is clearly intended to establish a uniform rule or system for the*
*whole state."* [59 C. J. sec. 536; and cases cited in footnotes 85 and
89. Italics ours.]

█ In applying the foregoing rule we are at liberty to take
judicial notice of matters of common knowledge, of matters of cur-
rent history as related to affairs of public interest and concern, such
as the depleted condition of public and private financial resources,
the inability, for lack of tax collection, of many of our public schools
to function adequately throughout the recent school term and the
present likelihood of insufficient collection of revenue to support the
schools during the ensuing school year; the great volume of taxes
throughout the State remaining delinquent and bearing oppressively
upon great numbers of property owners unable to meet the ac-
cumulated and accumulating interest and penalty charges thereon—
the summation of all of which and much more is reflected in the re-
citals of No. 80. In view of these considerations and of the broad
and all inclusive language of the act itself, we reach the following
conclusions as to the manifest legislative intent in the enactment of
this law and the resulting operative effect of No. 80:

█ Acts Nos. 110 and 115, covering only a part of the general
taxes in their limited field of operation, would produce confusion
and duplication of service in the collection of the taxes and would
introduce a note of disharmony in the established uniform rule and
system of the State,—a rule and system which No. 80 would follow—
and are inconsistent with the latter, which is a general act and covers
the whole subject matter of said special acts.

No. 80 is a valid and presently effective and operative temporary
law and effectually, during the limited period of its operation, sus-
pends the effectiveness and operation of Nos. 110 and 115, and also
suspends, during the same period and by necessary implication, such
statutory provisions contained in said chapter on taxation as are in
conflict with No. 80, and particularly the provisions relating to the
compensation of the respondent for any and all his services rendered
and to be rendered during said period incident to back or delinquent
taxes or the collection thereof.

From these considerations it follows that our alternative writ of
mandamus should be, and is hereby, made peremptory. All concur.