WALKER, Appellant, v. SORENSON, et al, Respondents.

(265 N. W. 589.)

(File No. 7868. Opinion filed March 7, 1936.)

*Irwin R. Erickson,* of Vermillion, and *Danforth & Davenport,* of Sioux Falls, for Appellant.

*Payne & Olson,* of Vermillion, for Respondents.

RUDOLPH, J. Plaintiff brought this action to quiet title to certain lands located along the Missouri river in Clay county. The land in dispute has had a history. Originally this land was a part of the state of Nebraska. About 1894 the Missouri river changed its course and located this land on the South Dakota side of the river. Thereafter, by joint action of Nebraska and South Dakota, the land became a part of Clay county. About 1912 the river com-

menced cutting into this land and finally cut away all of the tract. Just when the land was finally washed away is not entirely clear from the record. Some of the testimony placed the disappearance of this land as early as 1914, while others testified that the land was cut away in 1918. Later the river again changed its course, and the land was restored. The testimony regarding the time the land was restored is also in dispute.

Plaintiff's claim to the land is based upon substantially the following state of facts: In 1911, plaintiff received a deed to this land from one Helen Austin Whittemore, who was the only heir of one Rachel Austin. Rachel Austin died in 1904 and this disputed land was included in the probate proceedings in the Rachel Austin estate. The final decree entered by the county court in that estate in 1909 set this land over to Mrs. Whittemore. Rachel Austin was the wife of H. J. Austin, who had title to a considerable amount of land in the immediate vicinity of this land in dispute and who died in 1891. Prior to the death of H. J. Austin, he had deeded all of this real property to his wife, but H. J. Austin never had any record title to this land in dispute, and this land was not included in the land which he had deeded to his wife before his death. Mrs. Austin, Mrs. Whittemore, and the plaintiff paid the taxes on this land in dispute for the years 1902 to 1914, inclusive. The land was not assessed for taxes in Clay county prior to 1902, and it was not assessed for taxes after 1914, nor has it been assessed since it was restored by the river. It is the contention of the plaintiff that since 1891, he, Mrs. Whittemore and Mrs. Austin have been in actual possession of this land, upon which contention, together with the facts above recited, he bases his claim of title.

The defendant Sorenson claims title to this land upon substantially the following facts. Sorenson has title to the eighty acres of land directly north of the forty acres here in dispute. Sorenson received the title to this land from one Powell in 1912. Powell had received his title from one Egan in 1905. Egan and his father had owned the land since 1894. Sorenson maintains that at each transfer of this eighty acres, it was understood and agreed that the forty acres here in dispute, together with the possession thereof, were surrendered and passed to the new owner. It is Sorenson's claim that the Egans, Powell, and himself have been

in the actual and exclusive possession of this land since 1894, and that there was a privity between these successive possessors which caused their possession to ripen into title.

The trial court found the facts as follows:

"That Rachel R. Austin paid the taxes on said Northwest Quarter of the Northeast Quarter of said Section Twenty-three (23), in Township Thirty-two (32) North, of Range Four (4) East of the Sixth Principal Meridian for the years 1902 to 1908, both inclusive, but during that time she was not in possession thereof, nor did she have any color of title thereto. That Helen Pickett Austin Whittemore paid the taxes for the year 1909-1910, but she did not have any possession of the premises at the time. That the plaintiff paid the taxes for the years 1911 to 1914, both inclusive, but during that time he was not in the possession thereof.

"4. That for many years prior to 1905 either James Egan or his son, Edward M. Egan, his successor in interest, owned the West Half of the Southeast Quarter of Section Fourteen (14), in Township Thirty-two (32) North, of Range Four (4) East of the Sixth Principal Meridian in Clay County, South Dakota, same being immediately north of the Northwest Quarter of the Northeast Quarter of Section Twenty-three (23), in said Township and Range, and lived on same. That while they lived there, particularly from the year 1894, they were in possession of the Northwest Quarter of the Northeast Quarter of Section Twenty-three (23) in said Township and Range, the land in question, together with all the lands south thereof to the Missouri river. They kept same enclosed with fences running on the east side and on the west side to the Missouri river, and pastured the same, and made ordinary use of the same. That in April, 1905, the said Edward M. Egan transferred the said West Half of the Southwest Quarter of Section Fourteen (14), said Township and Range, to one Benjamin Powell, and at the same time surrendered possession of the Northwest Quarter of the Northeast Quarter of said Section Twenty-three (23) to the said Benjamin Powell. That said Benjamin Powell continued in the possession thereof, and protected the same, and used the same in the same manner until in April, 1912, when he transferred his interest in the lands to Niels Sorenson, defendant herein. That the said James Egan and said Edward M. Egan

and said Benjamin Powell, while in such possession, kept the land protected with a substantial enclosure, and used same for pasture, and cut wood thereon, and cultivated and improved the same and claimed to be the owners thereof. In each instance when a transfer was made of the lands north thereof it was stated and understood that the Northwest Quarter of the Northeast Quarter of Section Twenty-three (23), in Township Thirty-two (32) North, of Range Four (4), East of the Sixth Principal Meridian, together with the possession thereof, was surrendered and passed to the new owner."

Finding of fact No. 5 finds that 'Sorenson has been in the actual and exclusive possession of the land since 1912, and has kept it protected by substantial inclosures. We are of the opinion that the above findings of the trial court are supported by the evidence. A review of the evidence would serve no useful purpose. The evidence regarding the possession of this land was in direct conflict. The trial court resolved the conflict in favor of the possession of 'Sorenson and his predecessors. The evidence of Sorenson and his witnesses fairly established that Sorenson and his predecessors subjected this land to such use as it was possible and kept it inclosed with fences running on the east side and west side to the Missouri river. We are of the opinion that this evidence and the findings of the trial court thereon are sufficient upon which to predicate a possession within the meaning of section 2287, R. C. 1919, which provides the requirements of adverse possession where it is not founded on written instruments. The land was protected by a substantial inclosure within the meaning of said section 2287.

Section 2280, R. C. 1919, provides as follows: "No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appears that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within twenty years before the commencement of such action."

We approve the language of the North Dakota court, construing a statute identical with our section 2280, in the case of J. B. Streeter, Jr., Co. v. Frederickson, 11 N. D. 300, 91 N. W. 692, 694: "Under the statute just quoted, and all similar statutes, the decisive question in determining whether the bar is complete

as against a claimant out of possession is whether he, his ancestor, predecessor, or grantor, has been in possession within 20 years prior to commencing his action. In determining this question courts are frequently met with the fact that a number of persons have been in adverse possession successively. It is clear that, to make the bar of the statute complete as against a claimant out of possession, there must have been a continuous adverse possession for the full statutory period. When no privity exists between the several adverse occupants, the continuity of possession is broken at each new entry, for the reason that the law presumes that the true owner is in possession. When, however, there is privity of possession between the occupants, the courts have uniformly held that the one holding adversely may tack the possession of his predecessor to his own, and thus a continuous adverse possession is made out against the claimant out of possession. The entire scope of this so-called 'doctrine of tacking' is, however, as will be seen, not to determine whether the occupant has been in possession for any fixed period of time, but is to determine whether the claimant out of possession has in fact or in law been in possession within the statutory period, so as to entitled him to maintain his action. In other words, it is merely a uniform rule adopted by the courts for determining whether a claimant out of possession when his action is commenced has been in possession at any time within the 20-year period. If no privity is found to exist between the successive disseisors, and the last occupant has not held adversely for the full statutory period the bar is not complete, as the law presumes that the possession of the land returns to the true owner at each change of possession, when there is no privity between the several occupants. When, however, there is privity of possession, and it has continued for the statutory period, the bar is complete for the very plain reason that the claimant out of possession has not, in that event been in possession within the statutory period."

■ ■ Applying this reasoning to the facts as found by the trial court, it is clear that the plaintiff is not entitled to maintain this action as against the defendant, Sorenson, if the facts are sufficient to show a privity existing between the Egans and Powell, and Powell and Sorenson. We are of the opinion that the facts found by the trial court are sufficient to establish the required

privity between these successive possessors. The rule is well stated in the case of Viking Refrigerator & Manufacturing Co. v. Crawford, 84 Kan. 203, 114 P. 240, 35 L. R. A. (N. S.) 498, as follows: "No paper evidence of a transfer of possession of land held under a claim of the first entry is necessary. Where the possession of real estate is actual, it may commence in parol without deed or writing, and may be transferred and pass from one occupant to another by parol or bargain and sale accompanied by delivery."

 The facts in this Kansas case were in all respects parallel to the facts in this case, in that the record owner of land was in possession of adjoining land to which he had no record title. This owner conveyed the land to which he had title, and at the time turned over the possession of the land which he was holding adversely. The court held that no written transfer was necessary to constitute the privity requirement for a continuous adverse possession; that the verbal transfer of the actual possession accompanied by the delivery met all requirements. This court in the case of Labore v. Forbes, 59 S. D. 12, 238 N. W. 124, 125, said: "Privity exists between two occupants when possession is acquired by voluntary transfer of title or possession." Such is the general holding. See Helmick v. Davenport, R. I. & N. W. R. Co., 174 Iowa, 558, 156 N. W. 736; West v. Edwards, 41 Or. 609, 69 P. 992; Naher v. Farmer, 60 Wash. 600, 111 P. 768; 2 C. J. 83, and cases there cited.

Appellant contends that at the time the river washed this land away there was caused a break in the continuity of Sorenson's possession which would defeat his claim of holding adversely during the statutory period. A review of the evidence convinces us that the possession of Sorenson and his predecessors had extended for the statutory period prior to the time the river washed the land away. Some of the witnesses put the occurrence of the washing away of the land by the river as late as 1918, and the court found that Sorenson and his predecessors had been in possession of this land since the year 1894.

 We have carefully considered the affidavits submitted in connection with the motion for a new trial, and especially the affidavit of Edward M. Egan, and have concluded that the court did not abuse its discretion in denying the motion. The affidavits

were principally with reference to the possession and the character of the possession of Sorenson and his predecessors. This issue was thoroughly gone into at the trial and its determination was resolved against appellant. The case was tried to the court; his denial of the motion implies that even with the evidence contained in the affidavits the result would be the same upon a new trial. See Island v. Helmer 63 S. D. 362, 258 N. W. 812.

The judgment and order appealed from are affirmed.

All the Judges concur.