READ, Respondent, v. JERAULD COUNTY, et al, Appellants

(17 N. W.2d, 269.)

(File No. 8740. Opinion filed January 12, 1945.)

**Chas. R. Hatch, of** Wessington Springs, for Appellants.
**Royhl & Longstaff,** of Huron, for Respondent.

ROBERTS, J.

Plaintiff was the owner of a quarter section of land in Jerauld County, which was sold on December 21, 1931, for delinquent taxes. The statutory right of redemption was not exercised and as a result the county treasurer issued to Jerauld County a tax deed dated June 4, 1938. Upon tender of the full amount of taxes and costs included in the tax sale certificate and of subsequent taxes levied and assessed, plaintiff demanded of the county a conveyance by quit claim deed of the title acquired by the county. He asserted that right under the provisions of Chapter 46, Laws 1943. The board of county commissioners at its meeting on September 7, 1943, rejected the tender and demand to convey. After the foregoing proceedings plaintiff brought this action claiming a preferred right to purchase. Defendants answered denying such right. The case was submitted to the court upon a stipulation of facts. The court ruled that it was the mandatory duty of the county commissioners to authorize a conveyance and entered judgment accordingly.

It is contended by defendants that there is no mandatory obligation on the part of a county to convey to a former owner; that if the statute is mandatory it has no application after the expiration of the time within which claim to pos-

session of real propert sold for nonpayment of taxes may be asserted; and that the provisions of the 1943 law remitting penalty and interest are violative of the Constitution.

In 1939, the Legislature provided for conveyance of tax acquired property to former owners without the necessity of complying with the general provisions authorizing county commissioners to sell such property. The statute referred to, SDC 57.1125, contained these provisions:

"The county commissioners shall have authority to authorize a reconveyance by quit claim deed to the record owner only of any real estate held by the county under tax deed title only, without the necessity of any of the procedure required by section 57.1124 at any consideration not less than the total principal, interest, and costs of all taxes represented in the tax deed and any other taxes and interest which are unpaid upon said real estate. Nothing herein contained shall limit the discretion of the county commissioners to fix any higher price for such reconveyance or to annex to the reconveyance any such conditions or qualifications as they may decide."

This section was amended by Chapter 292, Laws of 1943, by replacing the words "the record owner" with the words "the record owner or his assignees or successors."

Chapter 46, Laws of 1943, reads as follows:

"The County Commissioners shall have authority to authorize a reconveyance by quit claim deed to the record owner or in case of his death, to his heirs, devisees and assigns of any real estate owned by the county, acquired through tax deed proceedings, without the necessity of complying with any of the requirements of the statutes relating to the sale of lands acquired by the county through tax deed proceedings, upon the full payment or tender of the principal of the taxes and costs included in the tax certificate of sale, together with the principal of subsequent taxes levied and assessed upon such real estate, together with interest and penalty on any such taxes of the year 1941 which became due and payable during the year 1942, and on any such taxes of the year 1942 which became due and payable during the year 1943, and costs, at any time prior to September 30th, 1943. The conveyances shall be made by quit claim deed

substantially in the form provided by Section 51.1403 of the South Dakota Code of 1939 and pursuant to a resolution of the Board of County Commissioners published in their minutes. The quit claim deed shall be executed by the treasurer and attested by the auditor under seal, and shall have effect only of releasing the title and claim, which the county and taxing districts represented by the same have under the tax deed."

When land is sold for taxes and a tax sale certificate is issued to a private purchaser the taxes are paid and the state and the local taxing districts hold no liens thereafter for the payment of taxes. The sale of land to a county is merely a process of enforcing the collection of taxes. The taxes remain unpaid until redemption is made, the certificate is assigned or the land is sold by the county after title is acquired by tax deed. Brink v. Dann et al., 33 S. D. 81, 144 N. W. 734; Hughes County v. Henry, 48 S. D. 98, 202 N. W. 286; Union Central Life Ins. Co. v. Hoilien, 60 S. D. 183, 244 N. W. 116. There is no merit in the contention of the defendants that the expiration of the three-year statute of limitations (SDC 57.0903, amended by Chap. 337, Laws of 1941) prevented the operation of the provisions governing sales to former owners. The legislature may regulate or change at any time the method of selling or disposing of properties to which counties have acquired title by tax proceedings.

It is argued that since the provisions of Chapter 46, supra, were permissive in form defendant commissioners were not required to convey the land to plaintiff. In the interpretation of an act of the legislature, it is the intent of that body that governs and not the literal meaning of the words employed. Brookings County v. Murphy, 23 S. D. 311, 121 N. W. 793; Lawrence County v. Meade County, 6 S. D. 528, 62 N. W. 131; Wood v. Waggoner, 67 S. D. 365, 293 N. W. 188. This act did not provide that a former owner could submit an offer to purchase, which the county could accept or reject, but such owner was permitted to make "full payment or tender" of the amounts required prior to September 30, 1943. The act did not vest in the board of county commissioners a discretion to fix a higher price or annex other conditions. The sale of property for delinquent taxes

is for the purpose of collecting taxes and not of acquiring title to property. The obvious purpose of the 1943 act was to encourage and expedite the passing of title to tax acquired property to former owners or their successors in interest. When the purpose of the act is considered, we think it inconsistent with such purpose to hold that the statute invested county commissioners with a discretion.

The Legislature has no power "to release or extinguish in whole or in part, the indebtedness, liability or obligation of any corporation or individual" to the state or to any municipal corporation. Constitution, Article 3, Section 24. The contention that the 1943 act was violative of this constitutional provision is based upon the fact that it permitted conveyance to a former owner without payment of interest and penalties for years prior to 1941. If tax liens were terminated by the issuance of tax deed to the county, there was no indebtedness, liability or obligation to be released or extinguished. The amount paid by a former owner constituted the purchase price of the tax acquired land. But conceding that the 1943 act was a redemption statute granting the right to redeem at any time before the county disposed of tax deed land, but not later than September 30, 1943. we do not think that this act violated the provisions of the Constitution under consideration. In Biles v. Robey, 43 Ariz. 276, 30 P.2d 841, 845, the court said:

"We think it is obvious that the various impositions made by legislative authority for the failure to pay taxes when due, whether they are called interest, penalties, costs, or anything else, are in reality penalties and not debts. The question has been frequently discussed, and the decisions are almost entirely to the effect that where the original taxes themselves are not regarded as debts upon which legal interest is collectible in the absence of a statute authorizing it, that any additional payment required by the legislative authority after the tax has become delinquent, is no part of the tax itself, as interest is a part of the ordinary loan, but is a penalty which is merely a part of the procedure used by the state for the purpose of collecting the tax."

See, to the same effect, Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317; Livesay v. De Armond, 131 Ore. 563, 284

P. 166, 68 A. L. R. 422; Jones v. Williams, 121 Tex. 94, 45 S. W.2d 130, 79 A. L. R. 983; State v. Hitsman, 99 Mont. 521, 44 P.2d 747; State ex rel. v. Koeln, 332 Mo. 1229, 61 S. W.2d 750.

The Constitution, Article 3, Section 23, prohibits the Legislature from enacting any private or special laws remitting "fines, penalties or forfeitures." This implies legislative power of remission of penalties by general law. Under established rules of construction, the Constitution should be construed as a whole and every provision should be construed, where possible, to give effect to every other provision. Applying this rule, we think that penalties are not within the purview of the words "indebtedness, liability or obligation" contained in section 24 of article 3 and that this latter section does not prohibit the remission of penalties by general law. State ex rel. v. Koeln, supra; Jones v. Williams, supra. The 1943 act was generally applicable throughout the state and was a general statute as distinguished from a private or special law. We conclude that the act in question was constitutional and valid.

The judgment appealed from is affirmed.
All the Judges concur.