BROADHURST, Respondent v. AMERICAN COLLOID COMPANY, et al., Appellants

(177 N.W.2d 261)

(File No. 10719. Opinion filed May 12, 1970)

**Overpeck, Hamblin & Mueller, Walter Mueller,** Belle Fourche, for appellants.

**Reynolds & Hughes,** Sundance, Wyo., **Stephens & Brandenburg,** Belle Fourche, for respondent.

HOMEYER, Judge.

This controversy involves the ownership of mineral rights in 280 acres[1] of land in Butte County, South Dakota. Defendants' claims are predicated upon title by adverse possession. The trial court concluded that plaintiff, who is the surface owner, also owned the minerals, and judgment was so entered from which the defendants appeal.

The subject property was a part of the public domain when homestead entry was allowed Charles C. Barbour on November 17, 1917. A patent was issued to him by the United States of America on January 17, 1923, and recorded in the office of the Register of Deeds on February 10, 1923. Title to minerals was not reserved.

Early in the year 1920 Bert Marchant was prospecting for minerals in the area and on September 8, 1920, he caused to be filed with the Register of Deeds a Location Notice of Bentonite Placer Claim No. 4 covering 160 acres involved in

---

1. The complaint describes 320 acres, but defendants make no claim to minerals in one 40-acre tract.

this controversy. On February 5, 1921, there was filed a like notice for Bentonite Placer Claim No. 17 on 160 acres,[2] of which 120 acres is here involved. On May 1, 1923, the locators of these claims conveyed all interest therein to The Belle Fourche Bentonite Products Company.[3]

Treasurer's Tax Deeds to Butte County were issued on September 12, 1936 and April 21, 1937, respectively, which included this real estate. On December 6, 1944, Butte County conveyed the property to W. J. Hultenschmidt, who on August 31, 1945, conveyed it to the plaintiff. Additional facts will appear in the discussion to follow.

 The law is well settled when a Patent issues to one who has previously made a homestead entry, it relates back for all purposes to the time of the original entry and cuts off any intervening claimants. Knapp v. Alexander-Edgar Lumber Co., 237 U.S. 162, 35 S.Ct. 515, 59 L.Ed. 894; Shepley v. Cowan, 91 U.S. 330, 23 L.Ed. 424; 42 Am.Jur., Public Lands, § 34, p. 813. Consequently, when the Patent issued to the homesteader, Barbour; without reserving title to the minerals in the United States, it related back to the time of his original entry upon the land on November 17, 1917, and the attempted location of mineral claims by Marchant subsequent to that date became a nullity. Until the issuance of a Patent, Marchant as the purported locator and mineral claimant may have been able to challenge the character of the land and possibly may have shown that it should not have been classified as nonmineral; however, after the United States of America acting through its General Land Office issued the Patent to Barbour without reserving the minerals, it was a final and conclusive adjudication that he was the owner and entitled to possession of not only surface

---

2. Plaintiff does not own 40 acres included in Placer Claim No. 17.

3. Defendant, Belle Products, Inc., by a mineral deed dated May 25, 1962, conveyed its interest in the bentonite to the defendant, American Colloid Company. All acts upon which the defendants rely to establish their title by adverse possession were performed by the defendants named or their predecessors in interest either as purported owners of the minerals or as lessee from the purported owner.

rights but also the mineral rights in the land described in the Patent. Barden v. Northern Pacific Railroad Co., 154 U.S. 288, 14 S.Ct. 1030, 38 L.Ed. 992; 36 Am.Jur., Mines and Minerals, § 14, p. 290. Thus any acts which either Marchant or his successors performed thereafter in the furtherance of protecting a purported mineral right under federal law were likewise a nullity.

■ Title to the land including title to all minerals remained in Barbour until the tax deeds mentioned supra were issued to Butte County. There is no privity between the holder of a tax deed and the former owner of the property. The tax deed has nothing to do with the prior chain of title. It is in the nature of an independent grant from the sovereign authority and extinguishes all former titles and liens not expressly excepted. Lambert v. Bradley, 73 S.D. 316, 42 N.W. 2d 606; Warren v. Blackman, 62 S.D. 26, 250 N.W. 681; Payne v. A.M. Fruh Company, N.D., 98 N.W.2d 27; Flag Oil Corporation of Delaware v. Phelps, Okl., 298 P.2d 456. A new title therefore originated with the tax deeds to Butte County and extinguished all former claims to such property whether premised upon adverse possession or otherwise. Harrison v. Everett, 135 Colo. 55, 308 P.2d 216.

Butte County held title to the property from September 12, 1936, (80 acres) and April 21, 1937 (200 acres) until December 6, 1944, when it was sold to W. J. Hultenschmidt. Defendants' claim to title to the minerals by adverse possession it is argued commenced from the time Butte County took title by tax deed. This argument assumes that when a county acquires a treasurer's tax deed to property for delinquent taxes it stands in the same position as a private person. We do not agree.

■ When a county purchases land at a tax sale for want of other bidders, SDCL 10-23-24, the county takes and holds the land, not in a proprietary capacity, but in trust for the state and other taxing districts within which it is located. Sasse v. King County, 196 Wash. 242, 82 P.2d 536; Board of County Com'rs of Choctaw County v. Schuessler, Okl., 358 P.2d 830. A sale of land to the county for delinquent taxes is merely a process of enforcing the payment and collection

of taxes. The taxes remain unpaid until redemption is made, the certificate is assigned, or the land is resold by the county after title by tax deed has been acquired. Read v. Jerauld County, 70 S.D. 298, 17 N.W.2d 269; Messersmith v. Stanga, 71 S.D. 88, 21 N.W.2d 321; Parrish v. Duncan, 72 S.D. 56, 29 N.W.2d 487.

■ The resale of the land by the county does not transfer the tax lien, Coughlin v. City of Pierre, 66 S.D. 523, 286 N.W. 877, and it is only a part of the statutory tax collecting process. It is not complete until such resale has been finally made by the county and the proceeds apportioned and distributed to the various taxing districts. SDCL 10-25-28, 10-25-39.

■ We find nothing in our statutes which should be construed that adverse possession will run against a county when it holds title under a tax deed before resale. Although there is some precedent to the contrary,[4] we believe the better rule to be that adverse possession does not run against the county while it is the owner of property obtained on sale for delinquent taxes. Harrison v. Everett, supra; Gustaveson v. Dwyer, 78 Wash. 336, 139 P.194; Winstead v. Winstead, 204 Miss. 787, 38 So.2d 118; Greene v. Esquibel, 58 N.M. 429, 272 P.2d 330; 2 C.J.S. Adverse Possession § 152e, p. 721.

■ What we have said disposes of defendants' claims based on adverse possession prior to December 6, 1944. Because we believe anything that occurred before that date is of no consequence so far as defendants' claims are concerned, for purposes of brevity we have chosen not to detail and list the testimony and documentary evidence consisting of notices, affidavits, leases, etc., in the record which defendants maintain support their claims to the minerals by adverse possession.

We now turn to defendants' claims predicated on what transpired subsequent to December 6, 1944. Defendants con-

---

4. In Goldman v. Quadrato, 142 Conn. 398, 114 A.2d 687, 55 A.L.R.2d 549, it was held that adverse possession may run against a municipal corporation on land not held for public use.

tend that they acquired title to the minerals by adverse possession thereof for more than twenty years under claim of ownership.[5] We mention some of the facts upon which they rely to establish their title. "Notices to Hold" were filed and recorded during each of the years 1945, 1946, 1947, 1948 and 1949. These notices during those years were permitted under federal law in lieu of performing assessment work. Company records show that during the years 1947, 1948, 1953 and 1955, viscosity testing was done on samples of ore taken from the property. From June 8, 1948 to August 4, 1966, except for the year 1949, affidavits of assessment work performed were filed. Federal law required at least $100 of assessment work to be performed annually on placer claims to retain ownership. There is some testimony that this work consisting of drilling test holes, stripping, or building roads was performed, but there is little or no testimony that it was done on the land involved in this controversy or that it was done with the knowledge of the plaintiff or his predecessor in interest.[6]

Plaintiff disclaimed knowledge that mining had been performed on this property until 1963. It should be noted that the foregoing were all done not under a claim of title adverse to plaintiff, but in the belief that title to the minerals was in the United States and it was necessary to do these acts under federal law to retain their rights in the minerals.

During the year 1949 defendants mined 25,922 tons of crude bentonite on Claim No. 4 and an additional 5,164 tons in 1952. Some stripping and mining on parts of Claim No. 17 was done in 1951 and 1952 according to company records.

Defendants also maintain that a Contract and release between the defendant, American Colloid Company, and plain-

---

5. The present action to quiet title was commenced by plaintiff against the defendants on August 26, 1966.

6. Plaintiff's ranch consists of about 9,000 acres. On some land adjoining Bentonite Placer Claims No. 4 and No. 17, the government had reserved the minerals and the defendants under their ownership or leases were entitled to explore for and remove minerals from that land.

tiff dated April 4, 1951, covering real estate which includes the subject property and a Release for surface damages dated August 16, 1951, between Belle Fourche Bentonite Products Company, which appears to have been the predecessor of the defendant, Belle Products, Inc., are supportive of the defendants' claims of adverse possession. They also call attention to a quiet title action prosecuted by plaintiff to judgment on March 1, 1947, wherein the mineral claimants were not named. These facts they say are an admission and recognition of defendants' claims to the minerals, and show an "acquiescence" which aids in establishing their title by adverse possession.

 Minerals in and under land are a part thereof until they are severed from the land. A severance may be effected by deed or by reservation or, in rare instances, by adverse possession. See Annot., 35 A.L.R.2d § 11, p. 138. Severance of a mineral interest from the surface estate creates two estates which are separate and distinct. Beulah Coal Mining Co. v. Heihn, 46 N.D. 646, 180 N.W. 787; Bilby v. Wire, N.D., 77 N.W.2d 882. Where there is a severance, possession of the surface estate does not constitute possession of the severed mineral interest. However, where there is no severance of the title to the surface estate from the mineral estate, adverse possession of the surface for the period fixed by statute will give title to the minerals. Payne v. A. M. Fruh Company, supra.

Although there is no severance of the surface estate of land from the underlying mineral estate, it has been held that title to the minerals may be acquired by adverse possession of the minerals. Wilson v. Henry, 40 Wis. 594, 607; Couch v. Armory Comm., etc., 91 Misc. 445, 154 N.Y.S. 945; 3 Am.Jur. 2d § 217, p. 311; Annot., 35 A.L.R.2d §11, p. 138.

In the Couch case, the court said: "Title to mines and minerals may be acquired by adverse possession, not only by the owner of the surface, but by a person having no interest in the surface (cases cited) and may thus be acquired when a person operates a mine or carries on mining operations continuously for 20 years adversely to the rights of others."

To establish title by adverse possession to minerals whether it be by the surface owner or by a stranger, possession of the minerals must be actual, open, notorious, and adverse, under color or claim of title and must be exclusive, continuous and uninterrupted for the statutory period. The general rules relating to adverse possession apply. "* * * (s)ome form of mining or activities directly related thereto is required; and it is generally held that actual adverse possession of mineral rights means the exercise of such acts of ownership, occupation, and operation of the mines or minerals as amount to a disseizure * * *." 58 C.J.S. Mines and Minerals § 135, pp. 220, 221. It must be at least reasonably continuous and an occasional or desultory occupation, such as occasional prospecting, working or taking of minerals is not adverse possession. Davis v. Federal Land Bank, 219 N.C. 248, 13 S.E.2d 417. It is not accomplished by recording of leases covering the property. Harkins v. Keith, 267 Ky. 353, 102 S.W.2d 5.

In Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394, the court said "adverse possession means adverse occupation and user, which must be wrought on the property in question. It cannot be wrought in the office of the county clerk no matter how many deeds or leases the would be disseizor may record there."

A use which is not hostile or adverse will not ripen into a prescriptive right. First Church of Christ, Scientist v. Revell, 68 S.D. 377, 2 N.W.2d 674. Adverse possession to be a bar under the statute must be continuous and uninterrupted for the full statutory period. Walker v. Sorenson, 64 S.D. 143, 265 N.W. 589. Physical exclusion of all others under a claim of right under our statutes has been said to be the sole test of adverse possession. Labore v. Forbes, 59 S.D. 12, 238 N.W. 124. The burden of proving title by adverse possession is upon the one who asserts it. Wallace v. Dunton, 30 S.D. 598, 139 N.W. 345.

With these basic principles in mind, it is our opinion, that defendants did not sustain the burden of proving adverse possession of the minerals for the required statutory time and failed to establish their title by adverse possession.

Proof of actual mining on portions of the subject property for two or three years of the statutory period falls far short of the proof required. The fact that plaintiff may have been mistaken as to his ownership of the minerals and did not learn that defendants did not own the minerals until two or three years before he commenced the present action does not supply essential concepts on proof of title by adverse possession.

Adverse possession is generally considered as synonymous with hostile possession. The two terms are often used interchangeably. Strictly speaking, possession which is not hostile cannot be adverse. First Church of Christ, Scientist v. Revell, supra; 2 C.J.S. Adverse Possession § 53; 3 Am.Jur. 2d, Adverse Possession, § 32. Defendants seemingly recognize that hostility is lacking in their claims, at least prior to about 1963, but seriously contend that under the case law of this state title by adverse possession can be conclusively established by **acquiescing** in another's pretended title for the statutory period. South Dakota cases cited are Lehman v. Smith, 40 S.D. 556, 168 N.W. 857; Sullivan v. Groves, 42 S.D. 60, 172 N.W. 926, and Labore v. Forbes, supra. See also Dailey v. Ryan, 71 S.D. 58, 21 N.W.2d 61.

We have carefully considered each of the cases upon which defendants rely. Each of those cases to some extent involved a boundary line dispute. What was there said must be considered in context with the question the court had for determination. It is true that a considerable number of jurisdictions in boundary line cases now hold that if land is **occupied** to a visible and ascertainable boundary for the statutory period, a hostile or adverse possession is deemed to have taken place although the claimant was ignorant of the fact and did not intend to claim the land of another. See Annotation Adverse possession involving ignorance or mistake as to boundaries—modern views. 80 A.L.R.2d 1171. Labore v. Forbes, supra, is mentioned in the annotation.

Defendants say that the rule we have adopted in boundary line cases should be applied here because "there is as much a boundary line between mineral rights and surface

rights as there are assumed boundary lines on the surface of the land". We do not share such view.

 When there has been no severance of the minerals from the surface, as here, title of the owner of the land includes not only the surface, but also that which lies beneath the surface. Smith v. Nyreen, N.D., 81 N.W.2d 769. It is conceded that plaintiff and his predecessors in interest were at all times the owners of and in possession of the surface and were not excluded therefrom by the defendants. Neither were they excluded from possession of the minerals for the statutory period. The trial court did not err in holding that the defendants had failed to establish their title to the minerals in question.

Affirmed.

All the Judges concur.